ESTATE OF THEODORE L. JOHNSON, DECEASED.

Probate of Destroyed Wills.—An Olographic Will destroyed by a friend of the testator in his presence, as being of no further use after a typewritten copy thereof had been made, is not "fraudulently destroyed," within the meaning of these words in the statute providing for the probate of lost or destroyed wills.

Edward C. Harrison, for proponent.

Bishop, Wheeler & Hoefler, for contestant.

COFFEY, J. A will destroyed in the presence and within the observation and with the consent of the destroyer, upon the suggestion of a disinterested friend that it was "of no further use and would better be destroyed," cannot be deemed "a fraudulently destroyed" will, within the meaning of section 1339 of the Code of Civil Procedure, so as to be entitled to probate under section 1338 of the same code, where it appears that such suggestion was honestly made in the full but erroneous belief, concurred in by the testator, that such will was worthless, and that a copy thereof signed by the testator and attested by only one witness was a legal and valid will, and there is nothing to show that any of the testator's heirs or other persons interested in his estate in any way connived at such destruction of his will, or had any knowledge of it until long afterward.

A fraud committed by a third person furnishes no ground of relief at law or in equity against one who did not participate in, or connive at, its commission.

To entitle a will to probate as having been "fraudulently destroyed" in the testator's lifetime, within the meaning of section 1339 of the Code of Civil Procedure, it must be shown that its destruction was procured through the fraud of some person interested to have such will destroyed.

The destruction of a will procured by alleged misrepresentations to the testator consisting merely of the honest expression of erroneous opinions as to matters of law by one holding no fiduciary relation to such testator, is not fraudulent destruction of such will within the meaning of Code of Civil Procedure, section 1339.

Our statute on the subject of trusts (Civ. Code, sec. 2215 et seq.) comprehends, classifies and defines all fiduciary relations known to our law, whether they are relations of technical trust or otherwise. Every fiduciary relation within the statute must be voluntarily assumed or must arise by operation of law.

Mere friendship between parties and the repose of confidence by one in the other will not alone create between them any fiduciary relation known to the law: See Ruhl v. Mott, 120 Cal. 668, 678, 679.

Where a testator applied to one, who had long been his friend, to attest his olographic will, and, upon the latter's suggestion, a typewritten copy of the will was prepared, signed by the testator, and attested by the friend as a witness, and such friend thereupon, without possessing or professing any knowledge of the law on that subject, expressed the opinion that the olographic will was "of no further use and would better be destroyed," honestly, though erroneously, believing that it was so, and that the typewritten will was legal and valid, and in consequence thereof the olographic will was destroyed with the testator's consent, it was held that these facts did not show that the friend had assumed any fiduciary relation to the testator so as to convert his honest but erroneous opinion upon such a matter of law into a fraudulent misrepresentation, and to make out a case of fraudulent destruction of the olographic will, within the meaning of Code of Civil Procedure, section 1339.

In order to make out a case of actual, as distinguished from constructive, fraud, a fraudulent or wrongful intent in doing the alleged wrong must be shown; as, where the destruction of a will in the testator's lifetime is alleged to have been procured by fraudulent misrepresentations, so as to entitle such will to probate as a ''fraudulently destroyed'' will under Code of Civil Procedure, sections 1338, 1339.

The fraudulent or wrongful intent necessary to make out a case of actual fraud cannot be presumed from the mere doing of the fraud or wrong alleged, but must be proved.

The contents of a will fraudulently destroyed in the testator's lifetime, in order to entitle such will to probate under Code of Civil Procedure, sections 1338, 1339, must be proved by two credible witnesses, and proof of such contents by one witness and a copy of the alleged will is not sufficient, especially where it appears that such copy is not a copy of the entire will, as where such alleged will was olographic and the copy does not include the date, or the like.

---

*The Decision in the Principal Case* is affirmed by the supreme court in 134 Cal. 662, 66 Pac. 847.

### LOST OR DESTROYED WILLS AND THEIR PROBATE.

**General Status of Lost or Destroyed Wills.**—A properly executed will, which has not been revoked by the testator, retains its validity even though it cannot be found or has been destroyed, provided, of course, that its destruction was not animo revocandi: In re Johnson's Will, 40 Conn. 587; In re Payne's Will, 4 T. B. Mon. 422; Steele v. Price, 5 B. Mon. 58.

As was said by the court in Foster's Appeal, 87 Pa. 67, 30 Am. Rep. 340, in speaking on this subject: ''The will then being in existence at the death of the testator unrevoked by him, its loss or accidental destruction differs not from the loss or destruction of any other solemn instrument, such as a deed, a note or bond, or a record. The contents, therefore, may be proved in like manner, as shown by the authorities cited. It is a postulate of the question that the testator left behind him at death a last will in writing, legally executed and published, and unrevoked by any act or direction of his. That the law will not tolerate any making of a will for him by other means than his own act in writing duly executed is clear. But such a will having a legal existence, yet accidentally lost or destroyed, the establishment of its contents is not the making of a new will, but a restoration merely of that which the testator himself made and left behind him to govern his estate. There is no greater sanctity, in

this respect, than the restoration by parol evidence of other instruments equally solemn and having an equal effect in the disposition of property. The law simply comes in aid of his own legally performed act, to prevent his intentions from being frustrated or defrauded.''

**Presumptions Arising from Inability to Find Will.**—The law never presumes the existence of a will in the absence of proof: Augustus v. Graves, 9 Barb. 595. But where a will is proved to have once existed and the will was in the possession of the testator, or where he had ready access to it, the presumption arises that it was destroyed animo revocandi where it cannot be found after the testator's death: Jaques v. Horton, 76 Ala. 238; Scott v. Maddox, 113 Ga. 795, 84 Am. St. Rep. 263, 39 S. E. 500; Boyle v. Boyle, 158 Ill. 228, 42 N. E. 140; Minor v. Guthrie (Ky.), 4 S. W. 179; Davis v. Sigourney, 8 Met. 487; Hamilton v. Crowe, 175 Mo. 634, 75 S. W. 389; Williams v. Miles, 68 Neb. 463, 110 Am. St. Rep. 431, 94 N. W. 705, 96 N. W. 151; In re Willitt's Estate (N. J. Eq.), 46 Atl. 519; Hard v. Ashley, 88 Hun, 103, 34 N. Y. Supp. 583; Collyer v. Collyer, 110 N. Y. 481, 6 Am. St. Rep. 405, 18 N. E. 110; Behrens v. Behrens, 47 Ohio St. 323, 21 Am. St. Rep. 820, 25 N. E. 209; Gardner v. Gardner, 177 Pa. 218, 35 Atl. 558; In re Bell's Estate, 13 S. D. 475, 83 N. W. 566; McElroy v. Phink, 97 Tex. 147, 76 S. W. 753, 77 S. W. 1025; Minkler v. Minkler's Estate, 14 Vt. 125; Appling v. Eades, 1 Gratt. 286; Jamison v. Snyder, 79 Wis. 286, 48 N. W. 261. Hence if the evidence shows that a lost will was last seen in the possession of the testator when he was mentally competent, it is presumed that he destroyed it animo revocandi, and the burden of proof is on the proponent to overcome this presumption: In re Colbert's Estate, 31 Mont. 461, 107 Am. St. Rep. 439, 78 Pac. 971, 80 Pac. 248.

And it has been observed that: ''It is therefore a natural presumption merely because it cannot be supposed the testator would part with it unless he intended to put it out of the way, and because it is out of the way and cannot be accounted for, the presumption that he intended to revoke it arises. Like other natural presumptions drawn from evidence and not declared de jure, for some legal end, it must give way to stronger evidence of the continued existence of the will and the testator's reliance upon it as the disposition he had made of his property'': Foster's Appeal, 87 Pa. 67, 30 Am. Rep. 340.

But, on the other hand, where the will was not in the custody of the testator, the fact that it cannot be found raises no presumption that he destroyed it animo revocandi: Coddington v. Jenner, 57 N. J. Eq. 528, 41 Atl. 874; In re Gardner's Estate, 164 Pa. 420, 30 Atl. 300; Harris v. Harris, 10 Wash. 555, 39 Pac. 148; In re Steinke's Will, 95 Wis. 121, 70 N. W. 61.

**Necessity to Rebut the Presumption of Revocation.**—This presumption of revocation arising from the inability to find a will which had been in the possession of the testator is, of course, a rebuttable one:

Davis v. Sigourney, 8 Met. 487; In re Willitt's Estate (N. J. Eq.), 46 Atl. 519; Minkler v. Minkler's Estate, 14 Vt. 125. The burden of rebutting this presumption is upon the proponent of the lost will: Jaques v. Horton, 76 Ala. 238; Scott v. Maddox, 113 Ga. 795, 84 Am. St. Rep. 263, 39 S. E. 500. And in order to overcome it, the proponent of the lost or destroyed will must prove that the testator did not destroy the will animo revocandi, and that he died believing it to be in existence: Gardner v. Gardner, 177 Pa. 218, 35 Atl. 588; or by showing that it was improperly or fraudulently destroyed during the lifetime of the testator: Idley v. Bowen, 11 Wend. 227.

Declarations of the testator having a tendency to show that if he destroyed it, he did so without intent of revoking it, as by accident or mistake, or, on the other hand, that he did so with an intent to revoke it, are admissible on the question of whether the will was destroyed animo revocandi: Hamilton v. Crowe, 175 Mo. 634, 75 S. W. 389; Behrens v. Behrens, 47 Ohio St. 323, 21 Am. St. Rep. 820; In re Steinke's Will, 95 Wis. 121, 70 N. W. 61; monographic note to In re Colbert's Estate, 107 Am. St. Rep. 468.

The presumption of revocation may also be rebutted by circumstantial evidence: Behrens v. Behrens, 47 Ohio St. 323, 21 Am. St. Rep. 820, 25 N. E. 209. Thus where the testator was careless about his papers, and his wife, who was cut off in the will, was present during several days prior to his death while he was unconscious, and had access to his papers, and she refused to deliver up his papers until an action was brought for that purpose, it was held sufficient to rebut the presumption of revocation arising from the fact that the will was last known to have been in the possession of the testator: Gavitt v. Moulton, 119 Wis. 35, 96 N. W. 395. Likewise, where the will was in the possession of the attorney who drew it, the presumption of revocation may be overcome by showing that it was burned while in the possession of the attorney by reason of his place being destroyed by fire: Codington v. Jenner, 57 N. J. Eq. 528, 41 Atl. 874.

**Distinction Where Will Lost Before and Where After the Death.—** Where a will was lost or destroyed after the death of the testator, it is necessary to show that it was in existence at the time of his death, but where the will was lost or destroyed before his death, it is necessary to show that it was destroyed without testator's knowledge or consent: Dickey v. Malechi, 6 Mo. 177, 34 Am. Dec. 130. But in some of the states, as, for instance, in California and New York, the matter is regulated by statute, to the effect that a lost or destroyed will, in order to be probated, must be proved to have been in existence at the time of the death of the testator, or shown to have been fraudulently destroyed in the lifetime of the testator: Estate of Kidder, 57 Cal. 282; Estate of Johnson, 134 Cal. 662, 66 Pac. 847; Timon v. Claffy, 45 Barb. 438; Schultz v. Schultz, 35 N. Y. 653, 91 Am. Dec. 88; In re Reiffeld's Will, 36 Misc. Rep. 472, 73 N. Y. Supp. 808.

And in Ohio it was held under a statute which made provisions for the probate of wills not revoked at the death of the testator, where the original will has been lost, spoliated, or destroyed subsequently to the death of the testator, but omitting any provisions respecting wills lost during the lifetime of the testator, that a will lost, spoliated, or destroyed could not be established unless it existed subsequently to the death of the testator, the court observing: ''If all this legislative machinery was to establish a will lost after the death of the testator, why is it that all provision whatever is omitted for the establishment of proof and record of a will lost before the decease of the testator? The answer is obvious: The General Assembly deemed it either impolitic, as opening the door to imposition and perjury or unnecessary, to permit wills lost or destroyed before the decease of the testator to be established. This court cannot, by construction, enlarge the terms of a statute so studiously limited and circumscribed'': Matter of Sinclair's Will, 5 Ohio St. 290.

The decisions respecting the construction of statutes of this character are not entirely satisfactory. They will be discussed in the next subdivision.

**Statutes Requiring Proof of Fraudulent Destruction in Lifetime of Testator.**—In New York under a code section which allowed any will ''lost or destroyed by accident or design'' to be established the same as in the case of lost deeds, but requiring proof that the will had been in existence at the time of the death of testator or that it had been fraudulently destroyed in the lifetime of the testator, the court observed: ''That it has been lost or destroyed by accident or design is conceded, and the supreme court had therefore jurisdiction to take proof of the execution and validity of the will, and to establish the same. But the learned judges of the supreme court have supposed that it could not be established unless there was affirmative proof that the will was in existence at the time of the testator's death, or that it was shown that it was fraudulently destroyed in the testator's lifetime. Both or either of these propositions may be established, as well by circumstantial as positive evidence.

''As to the existence of the will at the time of the testator's death, we have the conceded fact of the execution of the will, and of the deposit of the same with a custodian for safekeeping. The custodian testifies that after it was delivered to him, at the time of its execution, he never parted with its possession, but locked it in a trunk, and supposed it was there at the time of the testator's death. Upon search made for it after his death, it could not be found. There is not a scintilla of evidence or a circumstance to show that the testator ever had possession of the will after its execution and delivery to the custodian. It follows, therefore, as a legal conclusion that this will was in existence at the time of his death (if not, then fraudulently destroyed or lost), in which event, it being now lost or destroyed either by accident or design, it should be established as a valid will.

"If the will was not in existence at the time of the testator's death, then it follows equally clear that it must have been fraudulently destroyed in his lifetime or lost. The fraud mentioned and referred to in this connection is a fraud upon the testator by the destruction of his will, so that he should die intestate, when he intended and meant to have disposed of his estate by will, and never evinced any change of that intent. It is undeniable from the facts in the record that either this will was in existence at the time of the death of this testator, or that it had been destroyed in his lifetime, without his knowledge, consent or procurement, or accidentally lost. If so lost, it was done fraudulently as to him, and in judgment of law the legal results are the same precisely as if it had continued in existence up to the time of his death. In either contingency, it was his last will and testament, and its loss or destruction either by accident or design being proven, it is the duty of the court to establish it as the will of this testator'': Schultz v. Schultz, 35 N. Y. 653, 91 Am. Dec. 88.

Another view, however, of that statute had been taken in Timon v. Claffy, 45 Barb. 438, decided the previous year. It was there observed: ''The question of the fraudulent destruction of a will, under this section, must be one of fact. Fraud is never to be presumed. This is a fundamental rule. It is never to be imputed or inferred but must be proved by satisfactory evidence.

"The fraud in the destruction of a will must consist in some deceitful contrivance, device or practice, to defeat the wishes and intent of the testator in regard to his will. The fraud can only be alleged as against him, for during his life, no one else can have any legal rights or vested interests in a will to be defrauded. No one else can be defrauded until after his death, by the destruction of his will. The testator has the unqualified right, while in the full possession of his facilities [faculties] to destroy his own will at any time, or in any mode or manner he pleases, and I cannot see how it can be alleged or held that any fraud is or can be committed by any person in destroying or assisting to destroy a will by the express direction and in the presence of the testator, though it be not done in the presence of two witnesses so as to revoke it under section 42. The refusal, therefore, of the circuit judge to instruct the jury in this case, that if this will was destroyed in the presence of James Claffy and at his request, but not in the presence of two witnesses, as required by section 42, such destruction was fraudulent, was not erroneous, and the exception to such refusal was not well taken.'' This case was followed in Re De Groot's Will, 9 N. Y. Supp. 471.

The mere fact that the testatrix, while sick and in a half-asleep condition, dropped the will which she had been examining into the fire, and that her nurse did not rescue it, does not show a ''fraudulent destruction'' under the statute requiring proof of a fraudulent destruction in order to have a lost or destroyed will probated: In re Kidder's Estate, 66 Cal. 487, 6 Pac. 326. And in a later California

case it was said that in order to make the destruction of a will fraudulent within the code section, there must be the assertion of some fact not warranted by the information of the person making it. Hence, the destruction of an olographic will by a friend of the testator, as being, in the opinion of the friend, of no further use after the signing of a typewritten copy which had been suggested as a better form of will is not a fraudulent destruction, regardless of how erroneous such opinion may be, or with what degree of positiveness it may have been asserted: Estate of Johnson, 134 Cal. 662, 66 Pac. 847.

In an early case in the surrogate court of New York, it was stated that the destruction of a will without the knowledge or consent of the testator, in disregard of his intention, and to the injury of the person who was made the object of his bounty, is fraudulent within the meaning of the statute, though there was no fraud in the sense of an intent to benefit by it or deceive or injure anyone: Early v. Early, 5 Redf. Sur. 376. And in Re Reiffeld's Will, 36 Misc. Rep. 472, 73 N. Y. Supp. 808, the surrogate, in discussing the effect of an accidental destruction of the will of testator during his lifetime by a fire, the occurrence of which it was shown that he was informed of, said: ''A will destroyed during the lifetime of a testator, in order to be admitted to probate, must be shown to have been fraudulently destroyed. 'Fraud' is defined by the Standard Dictionary in its legal aspect as 'any artifice or deception practiced to cheat, deceive or circumvent another to his injury'; (2) 'any act, omission or concealment that involves a breach of duty, trust, or confidence, and which is injurious to another, or by which an undue advantage is taken of another.' 'Fraudulent' is defined objectively as 'based or proceeding from, or characterized by fraud.' 'Fraudulently' is an adverb of the same meaning, and is here used to characterize the manner of destruction intended by the statute. Here was no fraudulent destruction such as is provided for by statute, but only an accidental destruction for which no provision is made. The title to all property, real and personal, vests primarily in the sovereign state upon the death of the owner, and can only be devised or bequeathed in the manner and to the extent provided by statutes, which are to be strictly construed; so that I must determine, as a matter of law, that the accidental destruction of this instrument now offered for probate was fraudulent. I am unable to arrive at such a conclusion. The authorities referred to by the proponent do not, in my judgment, so decide. The will was destroyed accidentally, without the consent or knowledge of the testator; and by a failure to admit this instrument to probate, a different disposition will be made of his property than he intended. As I construe the statute, and construe the term 'fraudulently' as applicable thereto, it appears to me that, in order to come within the lines thereof, there must be some intervening human agency in motion, or set in motion, to have brought about its destruction. I am unable to see how the mere accidental destruction of this instrument

through the fault of no one, through the active agency of no one, can be construed or deemed of such a fraudulent character as to permit of the application of the statute.''

**What Constitutes a Fraudulent Destruction of the Will.**—Where a will was in testator's desk after his death, and a few days later it cannot be found, and there are marks of violence upon the desk showing the lock to have been broken open, a spoliation is shown, and it is not necessary for the proponents of the destroyed will to be able to designate the person who carried the will away: Bailey v. Stiles, 2 N. J. Eq. 220. And where a will devising the estate to the fiancé of testatrix was destroyed on the day of her death, by her brother burning it in the presence of several persons, but not in the presence of the testatrix, and under circumstances indicating stealth, the testatrix having declared repeatedly up to the morning of her death, that she had not changed her mind with respect to devising her estate to her fiancé it was held that the facts showed an actual fraudulent destruction of her will during her lifetime: In re De Groot's Will, 9 N. Y. Supp. 471.

Declarations of an heir of the testator, who is not a party to the record, to the effect that he destroyed the will after the testator's death, are merely hearsay and not admissible as against other persons interested in the case: Scott v. Maddox, 113 Ga. 795, 84 Am. St. Rep. 263, 39 S. E. 500.

**Effect of Mere Opportunity to Destroy as Evidence of Fraudulent Destruction.**—The mere fact that several persons had opportunities to destroy the will had they seen fit to do so is no evidence to establish a fraudulent destruction of the will: Collyer v. Collyer, 110 N. Y. 481, 6 Am. St. Rep. 405, 18 N. E. 110; In re Kennedy's Will, 53 App. Div. 105, 65 N. Y. Supp. 879. Hence, the mere opportunity to destroy the will on the part of interested persons is not sufficient to rebut the presumption that the testator destroyed it for the purpose of revoking it: Scott v. Maddox, 113 Ga. 795, 84 Am. St. Rep. 263, 39 S. E. 500. In speaking on this subject, the court in Bauskett v. Keitt, 22 S. C. 187, said: ''In this case there was no allegation or evidence tending to show that the will had been destroyed by accident, but the whole case of the plaintiffs depended upon their being able to show that the will was destroyed by the heirs at law, because it was to their interest so to do. This would have been a criminal act on their part, and, to establish it, there must be evidence satisfactory to the tribunal (in this case the jury) intrusted with the trial of the issue.· Indeed, the very ground upon which the rule is based, that where a will is traced to the possession of the testator, and it cannot be found after his death, the presumption is that the testator himself revoked it, is that the law will presume that an innocent, rather than a criminal act, has been done. Hence, in such a case, the law will presume that the will was destroyed by the testator, which would be an innocent act, rather than that it was destroyed by the heirs at law, even

though they might have an interest so to do, and might, by reason of their close relations to the testator, have the best of opportunities of so doing; because if they did it, their act would be a criminal one, which the law will not presume, but will require to be established by satisfactory evidence.''

But the presumption of revocation by the testator does not arise where the will was in the possession of one whose interests would not be subserved by the provisions of the will. Thus in McElroy v. Phink, 97 Tex. 147, 76 S. W. 753, 77 S. W. 1025, the court said: ''The authorities are practically in accord upon the proposition that where a will which, when last seen, was in the custody of the testator, cannot be found after his death, a presumption arises that it has been revoked. The proposition is evidently based upon the theory that it is a reasonable inference from the facts that the custodian, who in such case is the testator, has destroyed it for the purpose of revoking it. On the other hand, there is authority for holding that when at last accounts the will was in the hands of some one other than the testator—and especially in the possession of one to whose interest its provisions are adverse—the presumption of its destruction by the testator does not arise from the mere fact that it cannot be produced. It may be that, if the will is shown to have been destroyed, it would not be presumed that it was the act of some one other than the testator, for the reason, as given by the English courts, that it would not be presumed that the custodian had committed a crime. But in this case the testimony traces the will, when last seen, into the possession of the husband of the testatrix; and it also appears therefrom that by the instrument all her property was devised to the proponent, and that the husband was an heir to her estate. It does not show that the will was destroyed. It is merely shown that it could not be found. It may be that it has been lost. While it may not be permissible to infer that the husband had destroyed it, there is room for the presumption that he may have lost it. It is no offense against the law to lose an instrument in writing, and therefore it is not necessary to determine in this case whether to destroy the will of another, without authority to do so, is under our law, where all penal offenses are defined by statute, a criminal act or not. Therefore, we think that under the evidence adduced in this case, according to the rule generally recognized by the courts, the trial judge was at least authorized to find, as he did find, that the will had not been revoked.''
Still, the fact that the contestant of the lost will had an opportunity to destroy the will is a circumstance which may be considered with other proof on the question of overcoming the presumption that the will was destroyed by the testator: Gavitt v. Moulton, 119 Wis. 35, 96 N. W. 395.

**Undue Influence in Procuring Destruction of the Will.**—To prove that the destruction of a will was procured by undue influence, evidence showing what took place in the sick-room between the time

that the will was sent for and its being brought to testator, who then destroyed it, is admissible as part of the res gestae: Batton v. Watson, 13 Ga. 63, 58 Am. Dec. 504.

**What must be Shown with Respect to Lost or Destroyed Will.—** Where it is sought to prove the substance of a will not produced for probate, it is incumbent on the proponent to establish the fact that this testator made a valid will; the contents or substance of the will, or of such portion as might be recorded as his will; and that the will, though not in existence at his death, had not been revoked by him: Chisholm v. Ben, 7 B. Mon. 408. But frequently the statute prescribes what must be proved with respect to lost or destroyed wills, as in California, New York, and Ohio: Estate of Johnson, 134 Cal. 662, 66 Pac. 847; Harris v. Harris, 26 N. Y. 433; In re Sinclair's Will, 5 Ohio St. 290. Likewise in establishing an olographic will, it is necessary to prove all the essentials of an olographic will: Lucas v. Brooks. 23 La. Ann. 117; Fuentes v. Gaines, 25 La. Ann. 85.

The proponent of a lost will must prove that the will was actually in existence at the time of the testator's death or that it is in existence in contemplation of law: Kotz v. Belz, 178 Ill. 434, 53 N. E. 367; In re Colbert's Estate, 31 Mont. 461, 107 Am. St. Rep. 439, 78 Pac. 971, 80 Pac. 248. And where the mental incapacity of the testator to revoke the lost will is relied upon, it is not sufficient to show that the will may have been in existence after the time that the mind of the testator became impaired, but its actual existence after that time must be shown: Shacklett v. Roller, 97 Va. 639, 34 S. E. 492.

And, of course, one seeking to establish a lost or destroyed will has the burden of proving that it was not destroyed by the testator with intent to revoke it: McIntosh v. Moore, 22 Tex. Civ. App. 22, 53 S. W. 611.

**Stipulation or Admission as to Contents.—**A lost or destroyed will cannot be admitted to probate on a stipulation of counsel as to its contents: Matter of Ruser, 6 Dem. Sur. 31. And an admission upon the record that a paper had been duly executed as the last will and testament of the deceased does not dispense with the production of the testimony required by law to prove the execution thereof: Hylton v. Hylton, 1 Gratt. 161.

**Necessity for Institution of a Search for Missing Will.—**To entitle a party to give parol evidence of the contents of a lost will, where there is no conclusive evidence of its destruction, it must be shown that diligent search has been made in those places where it would be most probably found: Bryan v. Walton, 14 Ga. 185; Dan v. Brown, 4 Cow. 483, 15 Am. Dec. 395. Hence where a known will which, after being sent for by the testator, to be destroyed, was declared by the testator to have been destroyed, it is proper to search for it among the papers of the testator, although the presumption arises that it was destroyed: Bulkley v. Redmond, 2 Bradf. Sur. 281. But search for a will after the death of the testator need not be shown where it is

claimed that the will was fraudulently destroyed after such death and there is evidence to support such claim: Jones v. Casler, 139 Ind. 382, 47 Am. St. Rep. 274, 38 N. E. 812.

General Character of Evidence Admissible to Establish Will.—The best evidence which the nature of the case will admit of is admissible to prove the contents of a lost or destroyed will, but where the best evidence is not obtainable, a resort may be had to secondary evidence: Davis v. Sigourney, 8 Met. 487; Apperson v. Dowdy, 82 Va. 776, 1 S. E. 105; Gavitt v. Moulton, 119 Wis. 35, 96 N. W. 395; Southworth v. Adams, 11 Biss. 256, Fed. Cas. No. 13,194. Hence, it is said that where a will is lost or destroyed, as in the case of a deed, the next best evidence of its execution and contents is admissible, but it is also observed that "the proof of the loss being addressed exclusively to the court and for the satisfaction of the judge, need not be as strict and technical as is required by the general rules of evidence": Fetherly v. Waggoner, 11 Wend. 599. In Jaques v. Horton, 76 Ala. 238, the court, in discussing the admissibility and weight of secondary evidence to prove a lost will, said: "While the doctrine that there are no degrees in secondary evidence has not prevailed to its fullest extent, in this state, we are not prepared to adopt a stringent extension of the rule, which excludes all secondary, until the absence of the primary evidence is accounted for, to secondary evidence. Where the secondary evidence offered, ex natura rei, supposes a higher degree of secondary evidence, the best should be produced. 'But, where there is no ground for legal presumption that better secondary evidence exists, any proof is received, which is not admissible by other rules of law, unless the objecting party can show that better evidence was previously known to the other, and might have been produced; thus subjecting him, by positive proof, to the same imputation of fraud which the law itself presumes when primary evidence is withheld.' When a certified or examined copy of paper required to be recorded, or a letter-press copy of a writing is shown to be in existence, it is better evidence than the memoriter statements of a witness, and its production should be demanded: 1 Greenleaf on Evidence, sec. 84n; Cornett v. Williams, 20 Wall. 226, 22 L. Ed. 254."

And in an early case in Virginia, it was said with respect to the admission of parol evidence of the contents of a will, the probate records of which were destroyed during the war of the Revolution. that: "The rule is, that the best evidence that the nature of the case will admit of is to be received. On this principle, I think the evidence was admissible, though parol proof of the contents of an instrument must be generally very defective (it being seldom possible, after a lapse of time, that the witness can recollect the precise expressions in it, or their collocation, on which its meaning often depends), yet in aid of a long and continued possession in the defendants, and those under whom they claim, such testimony may be resorted to. It is the best evidence the nature of the case will admit

of'': Smith v. Carter, 3 Rand. 167. Hence the contents of a lost will may be proved by parol evidence: In re Lane's Will, 2 Dana, 106; Lucas v. Brooke, 23 La. Ann. 117; Legare v. Ashe, 1 Bay (S. C.), 464. And likewise the existence or loss of the will may be shown by circumstantial evidence: Schultz v. Schultz, 35 N. Y. 653, 91 Am. Dec. 88; Harris v. Harris, 10 Wash. 555, 39 Pac. 148. So, also, the presumption of revocation may be rebutted by either direct or circumstantial evidence: Matter of Johnson's Will, 40 Conn. 587. And it is even held that evidence of testator's character is admissible to show his tenacity of purpose and thus affect the probability of his revoking his will: Brown v. Brown, 10 Yerg. 84.

**Admissibility of Declarations of Testator.**—Inasmuch as the question of the admissibility of the declarations of a testator on an application to probate a lost will has been treated in the very recent monographic note attached to In re Colbert's Estate, 107 Am. St. Rep. 468, we shall not again discuss the subject. The general rule as shown by the note just referred to is that where the execution of a will is proved, and the question is whether it continued in existence unrevoked at the time of the testator's death, notwithstanding it cannot be found, his declarations are admissible either to repel or to support the presumption of its destruction and revocation.

**Burden of Proof Respecting Lost or Destroyed Wills.**—The burden of proof on the probate of a lost or destroyed will is upon the party offering the will for probate: Newell v. Homer, 120 Mass. 277; Graham v. O'Fallon, 3 Mo. 507; Coddington v. Jenner, 57 N. J. Eq. 528, 41 Atl. 874; Harris v. Harris, 10 Wash. 555, 39 Pac. 148; Southworth v. Adams, 11 Biss. 256, Fed. Cas. No. 13,194. Consequently, one seeking to establish a lost or destroyed will assumes the burden of overcoming, by adequate proof, the presumption that it has been destroyed animo revocandi: Collyer v. Collyer, 110 N. Y. 481, 6 Am. St. Rep. 405, 18 N. E. 110.

In proceedings under the New York code to establish a lost or destroyed will, the burden is on the proponent of the will to show that the will was in existence at the time of the testator's death, or that it was fraudulently destroyed during his lifetime: Perry v. Perry, 66 Hun, 629, 21 N. Y. Supp. 133.

**Quantum of Proof Necessary to Establish Will.**—The courts are not harmonious in their characterizations of the quantum or degree of proof necessary to establish a lost or destroyed will. In Jaques v. Horton, 76 Ala. 238, the court said: "We can conceive no valid reason why there should be any difference in the quantum of proof necessary to establish the contents of a lost will, and the contents of a lost deed, or other written instrument. In either case, the proof must be satisfactory and probably more caution should be observed in the case of a lost will, as the testator cannot be heard in respect to the disposition he has made of his estate, and as a will is required to be attested by two witnesses.''

Likewise in Davis v. Sigourney, 8 Met. 487, the court observed: "To authorize the probate of a lost will by parol proof of its contents, depending on the recollection of witnesses, the evidence must be strong, positive, and free from all doubt. Courts are bound to consider such evidence with great caution, and they cannot act on probabilities."

The different courts, however, vary in their characterizations of the proof necessary. Thus it has been said that the contents can be shown by such evidence as will satisfy the tribunal whose duty it is to decide the question: Morris v. Swaney, 7 Heisk. 591; McNeely v. Pearson (Tenn. Ch.), 42 S. W. 165. The will may be established upon satisfactory proof of its destruction and of its contents, but whether the proof be by one witness or by many, it must be clear, satisfactory and convincing: Wyckoff v. Wyckoff, 16 N. J. Eq. 401. Sometimes it is said that the evidence must be full and satisfactory: Dudley v. Wardner's Exr., 41 Vt. 59; clear and satisfactory; Matter of Johnson's Will, 40 Conn. 587; strong, positive and free from doubt: Newell v. Homer, 120 Mass. 277; Southworth v. Adams, 11 Biss. 256, Fed. Cas. No. 13,194; clear and explicit: Buchanan v. Matlock, 8 Humph. 930, 47 Am. Dec. 622; clear, conclusive and satisfactory: Kitchens v. Kitchens, 39 Ga. 168, 99 Am. Dec. 153; or the clearest, most conclusive and satisfactory proof: Nunn v. Lynch, 73 Ark. 20, 83 S. W. 316; Rhodes v. Vinson, 9 Gill, 169, 52 Am. Dec. 685. And it is also observed that courts of equity do not set up lost wills except where it is clearly shown that it should be done: Shacklett v. Roller, 97 Va. 639, 34 S. E. 492. And in New Jersey it is said that the execution and contents must be proved with clearness and certainty: In re Willitt's Estate (N. J. Eq.), 46 Atl. 519; or that the proof must be clear and convincing: Coddington v. Jenner, 57 N. J. Eq. 528, 41 Atl. 874. So, also, it is said that the evidence to overcome the presumption that a lost will was destroyed by the testator animo revocandi must be clear, satisfactory and convincing: In re Colbert's Estate, 31 Mont. 461, 107 Am. St. Rep. 439, 78 Pac. 971, 80 Pac. 248. And parol evidence for the purpose of showing that a former will was revoked by implication in the lost will must be clear, unequivocal and convincing: Williams v. Miles, 68 Neb. 463, 110 Am. St. Rep. 431, 94 N. W. 705, 96 N. W. 151.

Though the evidence of the contents of a lost will must be clear, full and satisfactory, it need not be such as to remove all reasonable doubt from the minds of the jury as to the substantial parts of the instrument: Skeggs v. Horton, 82 Ala. 352, 2 South. 110.

The supreme court of California, construing a section of the code which required the provisions of the lost or destroyed will to be "clearly and distinctly proved by at least two credible witnesses," said: "This provision of the code, being remedial in its nature, is to receive a liberal construction, and is held to apply as well to a mutilated will, or one in which some of its provisions have been destroyed: Hook v. Pratt, 8 Hun, 102. The above section does not

require that the witnesses shall reproduce the exact language of the testator, but that the 'provisions' of the will shall be 'clearly and distinctly proved.' If their testimony respecting the contents of the lost portion of the will coincides as to the provisions therein made by the testator, the court is authorized to establish such provisions as a portion of the will, even though the witnesses may differ as to their remembrance of the exact language used by the testator'': Estate of Camp, 134 Cal. 233, 66 Pac. 227.

**Degree of Proof as Against the Spoliator.**—"Where one deliberately destroys or purposely induces another to destroy a written instrument of any kind, and the contents of such instrument subsequently become a matter of judicial inquiry between the spoliator and an innocent party, the latter will not be required to make strict proof of the contents of such instrument in order to establish a right founded thereon'': In re Lambie's Estate, 97 Mich. 49, 56 N. W. 223.

**Effect of Lapse of Time on Quantum of Proof Necessary.**—The lapse of time naturally affects the weight of testimony respecting the contents of lost wills, and especially where the provisions of the will are alleged to have been somewhat complicated. Thus in Apperson v. Dowdy, 82 Va. 776, 1 S. E. 105, in a case of this kind, the court said: "For example, if perfect knowledge, a reasonable time, and a simple fact, be the question, and the witness reasonably intelligent, the contents might be satisfactorily proved by the recollection of the witness. Thus an intelligent witness, called upon to prove the contents of a will recently read by the witness, which devised a known tract of land to Peter Duncan, would not risk the miscarriage of justice. But in a case where a title and possession have been long enjoyed unchallenged, when such title is assailed only after the destruction of the records, by a witness who testifies to the contents of a paper she had never read, and of which she has never read an authenticated copy, and bases her knowledge upon having heard the will read, by an indifferent person, sixty-eight years before, when she was an infant, and so testifies, when she is an octogenarian, not to the devise of Peter Duncan simply, but as to the degree of estate so devised, and crowns the whole by making her (X) mark, instead of signing her name, we may well hesitate before we disturb an old title and possession upon such evidence. In this case there are many difficulties in the question as to the weight of this evidence. In 1880, could any person be expected to retain a perfect or a safe recollection of the contents of a paper read in her hearing in 1812? But when this is claimed for a young girl, who heard the paper read by a neighbor, and never heard it again for so many years, we might admit that the neighbor read the will correctly (a fact which she cannot prove), and then that she heard correctly, and yet we may well question whether her recollection is correct.''

So, also, in Todd's Heirs v. Wickliffe, 12 B. Mon. 289, the court in adverting to the inconsistencies in the testimony of a witness of intelligence and fine character respecting the terms of a will which

had been destroyed nearly fifty years before in the burning of a courthouse, observed that: "It all shows the frailty of human memory, and how little reliance is to be placed upon our recollection of the language, or even the substance of a written instrument after many years have gone by. Indeed, there is scarcely a competent lawyer who will venture to advise an applicant as to the meaning and effect of any devise in a will, upon his mere statement, although he may have come recently from its perusal. Before hazarding an opinion, he will dispatch his client for the instrument or a copy."

But where a lost will is more than thirty years old, and premises devised by it have been held under it from the time of the death of the testator, very slight evidence showing its proper execution will be deemed sufficient: Fetherly v. Waggoner, 11 Wend. 599.

**Effect of Number of Witnesses Testifying to the Execution or Contents.**—In the absence of statutory provisions requiring more than one witness, the contents of a lost or destroyed will may be established by one witness: Skeggs v. Horton, 82 Ala. 352, 2 South. 110; Matter of Page, 118 Ill. 576, 59 Am. Rep. 395, 8 N. E. 852; Dickey v. Malechi, 6 Mo. 177, 34 Am. Dec. 130; Jackson v. Vickory, 1 Wend. 406, 17 Am. Dec. 522. One witness is sufficient to establish the contents of a lost page of a will: Varnon v. Varnon, 67 Mo. App. 534. The proof of execution of a will may be made by one of the subscribing witnesses only, although the will be lost and the witness has forgotten the name of one of the other subscribing witnesses: Dan v. Brown, 4 Cow. 483, 15 Am. Dec. 395. And one of the subscribing witnesses will be sufficient to prove the execution of the will if he can prove that he saw the other witnesses subscribe it in the testator's presence: Graham v. O'Fallon, 3 Mo. 507.

The testimony of a single witness that the will was wholly written and signed by the testator is sufficient to set up such will if its loss after death of the testator is shown and its contents are satisfactorily made out: Baker v. Dobyns, 4 Dana, 220. But in Louisiana, it has been held that in proving a lost olographic will, two credible persons who have often seen the testator write and sign his name are necessary: Fuentes v. Gaines, 25 La. Ann. 85.

Perhaps the most famous case in which the contents of a complicated lost will were established by the evidence of a single witness was that of Sugden v. Lord St. Leonards, [1876] L. R. 1 P. D. 154. In that case the contents of the will were established by the daughter of the testator, who was interested as a devisee, but whose veracity was unquestioned. The witness had been the private secretary of her father, who was considered one of the ablest lawyers in England.

In Klarno v. Klarno, 4 Harr. 83, a will destroyed by an heir at law was admitted to probate on proof of its contents by one witness and the production of a rough draft, which had been found among the papers of the testator.

Where a testator having two wills in his possession, and intending to destroy the last will, by mistake destroys the first, the law does not require proof by two witnesses in order to establish the will intended to be destroyed: Burns v. Burns, 4 Serg. & R. 295.

The court, in Jacques v. Horton, 76 Ala. 238, very pertinently observed: "The testimony of a single witness who has read and remembers the contents of the will may be sufficient. Such evidence, however, should be clear and positive—not vague or uncertain recollections—and of such character 'as to leave no reasonable doubt as to the substantial parts of the paper.'"

It would seem that allowing a witness to state his mere recollection of the substance of a lost will of a complicated character is to, in effect, allow the witness to judicially construe the will without allowing his construction to be reviewed by considering whether the language employed in the will warranted the construction given by the witness. Of course, where the will made no attempt to devise the estate upon varying contingencies, it is quite likely that a nonprofessional witness could recollect the language employed in the will, and thus obviate the liability of the witness construing the will instead of testifying to the language employed in the will.

**Effect of Code Provisions Respecting the Number of Witnesses Necessary.**—Under a code provision of Georgia, it was necessary to establish the execution of a will destroyed since the death of the testator by the three subscribing witnesses if they are alive and within the jurisdiction of the court: Kitchens v. Kitchens, 39 Ga. 168, 99 Am. Dec. 453. And under a code provision requiring in case of loss "a copy of the same clearly proved to be such by the subscribing witnesses," the existence of the will must be proved by all the subscribing witnesses: Mosely v. Carr, 70 Ga. 333. And where the statute provides that no will shall be allowed to be proved as a lost will unless its provisions shall be clearly and distinctly proved by at least two credible witnesses, a copy of the will, even if proved to be correct, is not a substitute for a credible witness, nor is the evidence of only one witness who saw but did not read the will sufficient: Harris v. Harris, 10 Wash. 555, 39 Pac. 148. So, also, under a code provision requiring two credible witnesses to the contents of a lost or destroyed will, testimony of one witness to its provisions, and to the fact that it was executed as drawn by a certain lawyer, together with testimony of the lawyer as to the provisions of the will as drawn by him, and testimony of another witness who saw the will after it was executed, but who did not remember all of its provisions, is not sufficient: In re Waldron's Will, 19 Misc. Rep. 333, 44 N. Y. Supp. 353. Under a code provision requiring that the provisions of a lost or destroyed will must be clearly proved by two credible witnesses, each of the witnesses must be able to testify as to all the disposing parts of the will: Matter of Ruser, 6 Dem. Sur. 31; Todd v. Rennick, 13 Colo. 546, 22 Pac. 898.

**Establishment by Proof of Incapacity of Testator to Revoke Will.—** Where it is sought to establish a will destroyed by the testator on the ground that he was mentally incapable of revoking it, the court in McIntosh v. Moore, 22 Tex. Civ. 22, 53 S. W. 611, observed: "The burden of proving that he did not have such testamentary capacity at the time the will was destroyed was put upon the proponent, and it is not sufficient to show that a part of the time during the period between when the will was last seen and the time of his death, he did not possess such capacity; but it must reasonably appear from the evidence that at the time of its destruction he was lacking in testamentary capacity, for he may have been, during a part of the time that elapsed from the time when the will was last seen, and his death, incapable of revoking it, yet at the time of its destruction he may have possessed the necessary testamentary capacity."

**Establishment of Lost Will Revoking a Former Will.—**Parol evidence of the contents of a will subsequent to the one produced for probate, which subsequent will has been lost, destroyed, or canceled, is admissible to establish the revocation of the will produced: Lane v. Hill, 68 N. H. 275, 73 Am. St. Rep. 591, 44 Atl. 393. Evidence of the contents of an alleged lost will relied upon as a revocation of a prior one, offered for probate, is inadmissible in the absence of evidence that it was executed in the presence of two witnesses as required by the statute: McKenna v. McMichael, 189 Pa. 440, 42 Atl. 14. And it must also be shown that the lost will either in express terms revoked the former will or that its provisions in devising the property were so far inconsistent with the former will that it would operate as a revocation: Caeman v. Van Harke, 33 Kan. 333, 6 Pac. 620. The evidence to oppose the probate of a will may consist in the mere proof of a revocatory clause in a later will which has been lost or destroyed, even though the proof as to the entire contents be insufficient to admit the lost will to probate: In re Cunningham, 38 Minn. 169, 8 Am. St. Rep. 650, 36 N. W. 269; Williams v. Miles, 68 Neb. 463, 110 Am. St. Rep. 431, 94 N. W. 705, 96 N. W. 151. Where a will offered for probate was claimed to have been revoked by a later will drawn by the same attorney, testimony of the attorney who drew the will to the effect that the testatrix came to his office to have him draw the second will, whereby she desired to revoke the former will, and make certain changes in it, but, at the same time, did not desire to allow her husband, in whose hands the former will was to know of such changes, that she was anxious to have witnesses to the will, who would not speak of the fact of having witnessed the will, and that he remembered the date of the will, and the substance of the provisions, together with the testimony of the other witness to the will, a physician, who had offices next to those of the attorney, to the fact of execution, was held sufficient to prove the lost will: In re Bell's Estate, 13 S. D. 475, 83 N. W. 566.

**Matters Relating to Proof of the Execution of Will.—**The execution of a lost will must be shown by proof of all the statutory require-

ments respecting the execution of wills in the same manner as if the will had not been lost: Morell v. Morell, 157 Ind. 179, 60 N. E. 1092; Fuentes v. Gaines, 25 La. Ann. 85; Collyer v. Collyer, 4 Dem. Sur. 53.; Grant v. Grant, 1 Sand. Ch. 235; In re Hitchler's Will, 25 Misc. Rep. 365, 55 N. Y. Supp. 642; In re Purdy's Will, 46 App. Div. 33, 61 N. Y. Supp. 430; Tynan v. Paschal, 27 Tex. 286, 84 Am. Dec. 619. That is, the execution of a will must be proved by the subscribing witness, as provided by law, whereas the loss or destruction of the will or its contents may be shown by any other competent evidence: Scott v. Maddox, 113 Ga. 795, 84 Am. St. Rep. 263, 39 S. E. 500.

And the burden is on the party setting up a lost will to prove its execution, as well as its contents by strong, positive and convincing testimony: Southworth v. Adams, 11 Biss. 256, Fed. Cas. No. 13,194; Williams v. Miles, 68 Neb. 463, 110 Am. St. Rep. 431, 94 N. W. 705, 96 N. W. 151.

But where the evidence shows that the lost or destroyed will was in the possession of a party interested in its suppression, a presumption arises that it was executed in the form prescribed by law: Anderson v. Irwin, 101 Ill. 411; In re Lambie's Estate, 97 Mich. 49, 56 N. W. 223. On the question as to the admissibility of declarations of the testator to prove the fact of execution of the lost will, see the monographic note to In re Colbert's Estate, 107 Am. St. Rep. 460.

**Necessity of Calling All Subscribing Witnesses.**—Where all the subscribing witnesses to a lost will are within the jurisdiction of the court, they must be called. In such a case they are not the witnesses of either party, but of the court. But where one of the witnesses is dead, and another has removed beyond the jurisdiction of the court, the rule does not apply: Bailey v. Stiles, 2 N. J. Eq. 220.

**Inability of Subscribing Witness to Recollect Facts.**—Testimony of one subscribing witness that the lost will was executed in his presence, that of another named person, and another person whose name he could not recollect, but whom he knew to be a credible witness, is sufficient evidence of the proper execution of the lost will: Dan v. Brown, 4 Cow. 483, 15 Am. Dec. 395. And where one witness testified that he had no recollection of seeing the testator sign the will in the presence of the subscribing witnesses, but another witness (testator's wife) testified affirmatively that he did sign, in their presence, the court observed: "The rule of law is clear in such case; the affirmative witness must prevail. There is one consideration here worthy of being noticed. The will was executed in the year 1829, and the witnesses were examined in 1835. A period of six years had passed, and it would be no very strange occurrence that even a subscribing witness should not remember everything that took place at the time of the execution. Mr. Johnson, although evidently a very accurate witness, and, judging from his testimony, a cautious and just man, had no interest or feeling in this transaction. The wife of the testator was

his nurse, was present, held him up in the bed, and was greatly interested, no doubt, at the time, in all that was passing. The witness not only swears that her husband signed the will in the presence of the witnesses, but states all the circumstances. While the· proof is not as full on this point as I could have wished, yet by the rules of law as well as from the whole tenor of the evidence, I must declare the proof in the case to be that the will was signed by the testator in the presence of the witnesses'': Bailey v. Stiles, 2 N. J. Eq. 220.

But where the scrivener, who produced a draft of the lost will, containing neither the name of the testator nor the names of the witnesses, could not positively testify whether he was a subscribing witness, but thought that he was, but could not state whom the other witnesses were, the proof was regarded as insufficient to allow the will to probate: Collyer v. Collyer, 4 Dem. Sur. 53.

**Testimony of an Attorney that He Drew the Will,** but could not recollect who witnessed it, though he was in the habit of witnessing such wills himself, and having his clerk, if present, also witness them, together with like testimony from his clerk, except that the clerk had an impression, but no certainty, that he and the attorney witnessed the will, is not satisfactory proof to establish the execution of a lost or destroyed will: Grant v. Grant, 1 Sand. Ch. 235.

**Proof of Continued Existence of Will or Rebuttal of Presumption of Revocation.**—Where a testatrix, a woman over seventy years of age, left her will for safekeeping with her lawyer, who placed it in his desk with other valuable papers, no one outside of his family having access to the desk, and the lawyer testifies that no one called for the will, and that he cannot find it, the presumption that the will was revoked is overcome, notwithstanding that a person benefited by its revocation testified that the testatrix threw the will in the stove with intent to destroy it, and especially where the witness so testifying had an opportunity to have taken it surreptitiously from the lawyer's desk: Hildreth v. Schillenger, 10 N. J. Eq. 196. But where the will had been drawn nine years previously and placed in the safe of the subscribing witness, who did not remember when he had last seen it, but the business partner of the witness was an intimate friend of the testator, and the testator had frequently called at the business place of the witness, and it also appeared that the testator, several years prior to his death, had drawn another will which was a substantial copy of the earlier will, but had afterward obliterated the name of a devisee, and his own name, and the names of the subscribing witnesses, it was held to be insufficient to establish the lost will: Keesy v. Simon, 91 Hun, 642, 37 N. Y. Supp. 92.

Where a subscribing witness witnessed testator's will a few years before his death, in the presence of two other witnesses, the wife and a son of the testator, and the testator, several days before his death, had the will brought from a desk, where he kept his valuable papers, for the purpose of giving it to one of his sons for safekeeping, but changed his mind and returned the will to the desk, and his

widow testifies to having seen the will the day after testator's death, the evidence is sufficient to show that the will was in existence at the time of his death: Bailey v. Stiles, 2 N. J. Eq. 220. Evidence that an alleged witness to a lost will stated at the testator's funeral that he had the will in his pocket does not tend to prove that such was the case, there being no evidence that anyone ever saw it in his possession: In re Colbert's Estate, 31 Mont. 461, 107 Am. St. Rep. 439, 78 Pac. 971, 80 Pac. 248. Proof that a month before his death testator told a witness that he had made a will, that his daughter was his housekeeper, and had an interest in destroying the will, and that three days after his death his will was not to be found, is not sufficient evidence to authorize the submission whether the will was in existence at the death of the testator: Knapp v. Knapp, 10 N. Y. 276. But where a will executed in March, 1895, was seen in testatrix's possession, in January, 1898, and the envelope containing the will was seen in a closet where testatrix kept valuable papers, on June 11, 1898, but was not seen again, and the testatrix died on the thirty-first day of July, 1898, the presumption arises that it was destroyed animo revocandi: In re Kennedy's Will, 53 App. Div. 105, 65 N. Y. Supp. 879.

Proof of Contents of Lost or Destroyed Will.—Upon proof that a will has been lost, its contents may ordinarily be shown by parol in the same way as the contents of any other lost instrument: Butler v. Butler, 5 Harr. 178; Muller v. Muller, 108 Ky. 511, 56 S. W. 802; Lane v. Hill, 68 N. H. 275, 73 Am. St. Rep. 591, 44 Atl. 393; Scoggins v. Turner, 98 N. C. 135, 3 S. E. 719; Brinker v. Brinker, 7 Pa. 53; McNeely v. Pearson (Tenn. Ch.), 42 S. W. 165.

Whether the contents of an alleged lost will can be proved solely by the declarations of the testator is doubtful, but the fact that such declarations are admissible in connection with other evidence is quite well established: Monographic note to In re Colbert's Estate, 107 Am. St. Rep. 469.

In some of the states, however, the statutes require the provisions of lost or destroyed wills to be established by two credible witnesses.

How Much of Will must be Proved.—Several courts have held that where the entire contents of the lost or destroyed will cannot be proved, probate may be granted to the extent to which the contents are proved: Skeggs v. Horton, 82 Ala. 352, 2 South. 110; Steele v. Price, 5 B. Mon. 58; Dickey v. Malechi, 6 Mo. 177, 34 Am. Dec. 130; Sugden v. Lord St. Leonards, [1876] L. R. 1 P. D. 154.

But we think that the rule announced by the court in Butler v. Butler, 5 Harr. 178, is the safer rule. The court said: ''In order to establish a last will and testament, which has been lost or destroyed, the same formalities and rules of law must be observed as are applicable to other lost or destroyed instruments; for I know of no reason founded either in the policy of the law or any facts arising from any peculiar circumstances attending such cases, to make them

exceptions to the general rules which are so well settled and established as to all other cases.

"First, then, the existence of the instrument in a legal form must be proved; secondly, its loss or destruction; and thirdly, its contents. Nothing short of this will satisfy the requirements of the law which governs all cases of this sort; therefore, proving part only of the contents of a will which is lost or destroyed is not sufficient to establish it, even as to the part so proved, unless it satisfactorily appears that there is nothing in the preceding or subsequent part of the will which would qualify, change, or in any' way alter the particular devise proved; for without knowing the certainty of the will and the language used by the testator, it would be impossible to determine what estate would pass under it. The words of the particular devise, which may be attempted to be established, might convey a fee simple; yet something might precede or follow which would reduce it to a life estate, or subject it to some other restriction or limitation; or the words of the devise might create but a life estate, which by the preceding and subsequent part of the will might be enlarged and extended to a fee simple; and either an estate in fee simple, for life or for years, might depend entirely upon some contingencies, limitations, or restrictions imposed by some subsequent part of the will."

The observations of the court in Davis v. Sigourney, 8 Met. 487, were also to the same effect. In Tarbell v. Forbes, 177 Mass. 238, 58 N. E. 873, it was observed that any clause of a lost will which is complete in itself and independent of other provisions of the will may be admitted to probate, although other provisions cannot be proved, but it must be apparent that the unproved provisions cannot affect the provisions which are proved.

The probate of a lost or destroyed will is authorized where the evidence clearly establishes such part, though it does not disclose all the other parts, if the will has been fraudulently destroyed after the death of the decedent by her husband or other persons against whose interest the probate of the will is sought: Jones v. Casler, 139 Ind. 382, 47 Am. St. Rep. 274, 38 N. E. 812.

In Williams v. Miles, 68 Neb. 463, 110 Am. St. Rep. 431, 94 N. W. 705, 96 N. W. 157, the court decided that the contents of a lost will must be shown to such an extent as is necessary to establish a revocation of any former will by implication where no express revocation is shown, and that such revocation must be shown by clear, unequivocal and convincing evidence.

Code provisions relating to the proof of the provisions of a lost will apply only to those provisions which affect the disposition of property, and are of the substance of the will; hence the failure of the witnesses to agree as to whether a certain person or any person was appointed executor is not such a portion as affects the disposition of the property: Early v. Early, 5 Redf. Sur. 376.

**Sufficiency of Proof if Only the Substance of the Will be Shown.—** It is sufficient if the substance of a lost or destroyed will be proved without proving the precise language employed in the will: Allison's Devisees v. Allison's Heirs, 7 Dana, 90; Jones v. Casler, 139 Ind. 382, 47 Am. St. Rep. 274, 38 N. E. 812. In Estate of Camp, 134 Cal. 233, 66 Pac. 227, the court said: "If their testimony respecting the contents of the lost portion of the will coincides as to the provisions therein made by the testator, the court is authorized to establish such provisions as a portion of the will, even though the witnesses may differ as to their remembrance of the exact language used by the testator. Thornton, in his treatise on Lost Wills, says (section 108): 'It is enough to prove the substance of the will without proving the precise statement of the language or terms used in it.'

"In Jones v. Casler, 139 Ind. 382, 47 Am. St. Rep. 274, 38 N. E. 812, that court said, with reference to the sufficiency of the petition: 'To require that a copy of the will, or the language of the bequests in detail, should be pleaded, where no copy has been preserved, and where the memory of witnesses does not hold the exact words, would not only deny the substance for mere form, but would offer a premium upon the rascality of one whose interests might suggest the destruction of the will'; and in answer to the contention that the findings must establish the exact words of the will, said: 'We have said, upon the demurrer to the complaint, that the substance is sufficient where the exact words cannot be established, and more certainty in findings cannot be required than is required in pleading or in evidence': See, also, McNally v. Brown, 51 Redf. 273. In jurisdictions where the contents of a lost will may be proved by a single witness, it is held that such witness is not required to repeat the exact language of the instrument: Anderson v. Irwin, 101 Ill. 411; Burls v. Burls, L. R. 1 P. D. 472. A notable case in which this rule was applied was that of the will of Sir Edward Sugden: Sugden v. Lord St. Leonards, L. R. 1 P. D. 154. Under the reason of this rule, a different remembrance of the exact language of the will by different witnesses would not take away the right to have the provisions of the will established, which are supported by the language told by each of them, and are consistent therewith.

"The testimony of each of the witnesses herein was to the effect that the disposition of his property made by the testator in the missing portion of his will was in favor of his wife during her lifetime, and for their children after her death. The testimony of the witness Bonham was more concise than that of McQuiddy, and the finding of the court corresponds more closely to this; but, although McQuiddy does not give the same language as does Bonham, and himself states the same in different forms, there is no contradiction between them as to the substance of the testator's provision for this disposition of his property. The property disposed of, the persons in whose favor the disposition was made, and the extent of the disposition in favor of these persons, were the same.''

Under a code provision that the will shall be "clearly and distinctly proved by at least two credible witnesses," the witnesses need not be able to testify to the exact language of the lost will, but they must be able to testify to the substance of the whole will, so that it may be incorporated in the decree should the will be admitted to probate: McNally v. Brown, 5 Redf. Sur. 372.

**Discrepancy in Evidence as to Contents of Will.**—Two witnesses need not concur in their evidence as to the entire contents of an alleged lost or destroyed will, so that the instrument can be reproduced in writing and written out at full length upon the probate records. It is sufficient that they agree as to the substance of the provisions conferring some property rights upon the devisees or legatees: Jones v. Casler, 139 Ind. 382, 47 Am. St. Rep. 274, 38 N. E. 812.

But where there are four or five witnesses, no two of whom agree as to the entire contents of the will, and all, or nearly all, of whom affirm their recollection to be indistinct and imperfect, there is not that degree of proof which convinces the mind and satisfies the judgment as to what the contents of the lost will were: Rhodes v. Vinson, 9 Gill. 169, 52 Am. Dec. 685. And where four witnesses testify to having read the lost will three years before, and three of them testify that the devise was to the heirs of the testator's mother, while the other witness testifies that it was to the mother "and" her heirs, and the testator, who was a lawyer, was his mother's only heir, and the mother was dead when the will was executed, it was held that the provisions of the will were not clearly and distinctly proved by two credible witnesses: In re Purdy's Will, 25 Misc. Rep. 458, 55 N. Y. Supp. 644.

**Evidence of Scrivener as to Contents Given in Alternative.**—Where the lawyer who drew the will testifies that the lost will either gave the whole estate to the wife absolutely or that it gave it to her for life with remainder to her children, but he could not testify which, but thought that it gave the whole estate to the wife absolutely, the testimony lacks the statutory elements of clearness and distinctiveness: Matter of Ruser, 6 Dem. Sur. 31.

**Evidence of Impression of Contents Without Positive Recollection.** Where a witness who had drawn three or more wills for the testator simply had an impression, but no positive recollection of drawing a will subsequent to the one offered for probate, and could not fix its date, or state whether it was attested, or the names of the witnesses to it, or tell which will he followed out of several wills shown him, the evidence is insufficient to show that a lost will was executed revoking former wills: West v. West, 144 Mo. 119, 46 S. W. 139.

So, also, in Davis v. Sigourney, 8 Met. 487, the question also arose. The facts as stated by the court were as follows: "The witness, having in his possession the will of 1834, a rough draft of the will of 1837, and the will drawn by him in 1840, undertakes, from these materials, and from his recollection, to testify as to the contents of

the will of 1837, and the codicil or codicils thereto, according to a copy of the substance thereof prepared by him. By this copy, it appears that there was bequeathed to the testator's two unmarried daughters the sum of fifteen hundred dollars each. The witness testifies that he thinks that was the sum; and when interrogated how clear was his recollection, he answers: 'If I have any doubt, it is a very slight one, and I do not wish to be any more confident than I have already expressed.' He also testifies that there may have been some slight alterations between the will of 1837 and the rough draft; but he does not remember any. He says it was mainly so; and when asked whether it differed in any point, he answers, 'I do not remember at this moment that it did, but I cannot be positive.' He testifies that the rough draft was an outline prepared to be shown to the testator, and if he should have made any suggestion of an alteration, it would, of course, have been made. The witness is equally uncertain to what extent he followed the will of 1837, and the codicil or codicils, in making the will of 1840.

"In the will of 1834 the devises to the daughters of their shares in the real estate were in fee simple; whereas, in the will proved in the probate court, the shares of the daughters are given to them for life, with remainder to their descendants. And as to this alteration, Mr. Simmons testifies that he does not distinctly remember that it was made by the direction of the testator, though he had no doubt that it was.

"Upon such doubtful evidence, the court cannot feel justified in confirming the decree of the judge of probate establishing this will. To authorize the probate of a lost will, by parol proof of its contents, depending on the recollection of witnesses, the evidence must be strong, positive and free from all doubt. Courts are bound to consider such evidence with great caution, and they cannot act upon probabilities."

Proof of Contents Where Will Fraudulently Destroyed.—Where one destroys a will or connives at its destruction, in a contest between the spoliator and an innocent party, the latter is only required to show in general terms the disposition which the testator made of his property, and is not required to produce as high a degree of proof as in a case where the circumstances of spoliation does not occur: Anderson v. Irwin, 101 Ill. 411; In re Lambie's Estate, 97 Mich. 49, 56 N. W. 223.

Witness Who Only Heard Will Read or Who had Read Only a Part of It.—Testimony of a clerk in the lawyer's office, who heard the scrivener read the will in the presence of the testator at the time of its execution is hearsay relating to the scrivener's declarations: Colligan v. McKernan, 2 Dem. Sur. 421. And testimony as to the contents of a lost will by a witness who has not inspected it but merely heard the testator read it, has been rejected as being in effect only

testimony as to the declarations of the testator: Clark v. Turner, 50 Neb. 290, 33 L. R. A. 433, 69 N. W. 843. Testimony by a witness who did not read the whole will or otherwise know its contents is of no appreciable value: Matter of Ruser, 6 Dem. Sur. 31.

In Morris v. Swaney, 7 Heisk. 591, the court, in discussing the value of evidence by a person who only heard the will read, said: "There is no doubt that the knowledge of a witness who only hears a paper read is not of as high a character as that of a witness who reads himself, for the witness who hears it read cannot know that it is correctly read to him. Still his evidence must be admissible. How satisfactory it will be depends upon other circumstances.

"It cannot be upon principle that the evidence of the contents of a paper must necessarily be derived from a reading by the witness. Records may be proved by an examined copy; that is, by producing a witness who has compared the copy with the original, or with what the officers of the court, or any other person, reads as the contents of the record. It is not necessary for the persons examining to exchange papers, and read alternately both ways: 1 Greenleaf on Evidence, sec. 508. This shows that the reading by another party may be the means by which the witness obtains a knowledge of the contents of the paper."

**Use of Copy or Draft in Proving the Contents.**—Probate of a lost or destroyed will may be had upon proof of its contents by a copy of the original will, since the copy constitutes, under such circumstances, the best evidence in the power of the party seeking the probate of the lost will: In re Happy's Will, 4 Bibb, 553; Graham v. O'Fallon, 3 Mo. 507; Spencer v. Spencer, 1 Gall, 622, Fed. Cas. No. 13,233.

Under the New York statutes a correct copy or draft of a lost or destroyed will is equivalent to one witness: In re Granacher's Will, 74 App. Div. 567, 77 N. Y. Supp. 748, affirmed in 174 N. Y. 504, 66 N. E. 1109. Hence where the scrivener produces the draft of the will which was engrossed by his clerk, and after being so engrossed was executed by the testator, the draft may be treated as a substitute for one of the witnesses required by the statute: Collyer v. Collyer, 4 Dem. Sur. 53.

But where the proponent fails to establish the correctness of a copy proposed for probate, the failure may be considered in determining the credibility of the parol evidence to establish the will: Jaques v. Horton, 76 Ala. 238.

**Incomplete Copy or Draft Showing that Certain Clauses were Altered.**—The fact that the lost will contained a clause not in the copy offered in evidence, to the effect that the husband of the testatrix should be executor, will not prevent the probate of the copy where it is shown that the husband died prior to the testatrix: Tarbell v. Forbes, 177 Mass. 238, 58 N. E. 873. Where a draft of a will, after showing unmistakable disposition of the realty, had a clause directing the personal property to remain in the family for six years, and then

to be divided equally among the four younger sons, there being eight children in the family, but at the side of the clause, inclosed in brackets, are the words: "this altered," and at the foot of the writing are added the words, "must remember to divide the personal property," it was held that the true meaning of the clause was that the personal property should be divided among all of the children instead of amongst the four younger children: Bailey v. Stiles, 2 N. J. Eq. 220.

**Pencil Draft Compared by Scrivener with Lost Will.**—Where the will was accidentally destroyed by fire while in the possession of testator's attorney, a pencil copy drafted by the attorney from oral instructions given by the testator, and compared by the attorney with the original will before it was executed, the execution of the will being before the attorney and another, is sufficient to authorize the probate of the pencil copy where it is identified by the attorney who drew it: Coddington v. Jenner, 57 N. J. Eq. 528, 41 Atl. 874.

**Copy of an Olographic Will.**—Where the will offered for probate was a copy of an olographic will, testimony of the person who read the copy and the person who copied it, together with the copy itself, fulfills the requirement of the code that a lost or destroyed will be "clearly and distinctly proved by at least two credible witnesses, a correct copy or draft being equivalent to one witness": In re De Groot, 9 N. Y. Supp. 471.

**Will Recorded at Request of Testator During Lifetime.**—In proceedings to probate a will destroyed by the testator during temporary insanity, although the record of the will caused to be recorded in the recorder's office by the testator was not competent evidence as a record, still it is competent for the purpose of exhibiting a copy of the instrument, and where the copy is shown to be a true one by the testimony of one witness, it is not necessary to prove the exact contents by any other witness, provided that some other witness states in general terms the provisions of the lost will, in order to comply with the provisions of the statute requiring proof by "a correct copy and the testimony of one witness": Forbing v. Weber, 99 Ind. 588.

**Proof of Lost Will, After Its Probate, for Use in Other Proceedings— Presumption Arising from Loss After Probate.**—Where it is shown that a will was admitted to probate before its destruction or loss, the presumption arises that it was properly executed by the testator: Kotz v. Belz, 178 Ill. 434, 53 N. E. 367; Marshall v. Marshall, 42 S. C. 436, 20 S. E. 298; McNeely v. Pearson (Tenn. Ch.), 42 S. W. 165.

**Effect of Probate Records and Certified Copies Thereof.**—After a will has been probated and recorded in a proceeding had for that purpose in the proper court, such record is prima facie evidence in future proceedings contesting the validity of the will: Banning v. Banning, 12 Ohio St. 437; Behrens v. Behrens, 47 Ohio St. 323, 21 Am. St. Rep. 820, 25 N. E. 209. Consequently, where the original will has been lost, the record of the probate in the book of the judge of

the probate court is admissible in evidence: Jackson v. Lucett, 2 Caines, 363. And a copy of a will with letters testamentary, under the hand and seal of a deputy commissary, is admissible in evidence upon proof that diligent search has been made for the original: Smith v. Steele, 1 Har. & McH. 419. And where a witness testified to the contents of a lost will, and the records of a county court show how the lands in controversy were devised by the will, and the heirs and devisees had for forty years acquiesced in the use of the land under the devise as shown by the records, the court will hold that the contents were shown by clear and convincing testimony: McNeely v. Pearson (Tenn. Ch.), 42 S. W. 165. But where the record of the probate court merely shows that the will was probated, but does not show its contents, and the will was not recorded, and the testimony of witnesses claiming knowledge of its contents vary as to the contents, no two witnesses agreeing to the substance of the important dispositions, the evidence is insufficient to establish the contents of the will: Nunn v. Lynch, 73 Ark. 20, 83 S. W. 316.

**Effect of Statute Requiring Two Witnesses to Prove Lost Will.—** Under the statutes of New York, requiring the contents of a lost or destroyed will to be proved by two credible witnesses, the court has held that the provision only applies to proceedings for the purpose of probating the will, and not to other proceedings in which it is necessary to prove the contents of a lost or destroyed will: Harris v. Harris, 26 N. Y. 433.

**Proof Where the Probate Records have been Destroyed.—**The manner in which a will lost or destroyed by a great conflagration may be proved where the will had been probated and made a matter of record is shown by the case of Kotz v. Belz, 178 Ill. 434, 53 N. E. 367. Inasmuch as the opinion of the court discusses both the facts and law, we will quote the portion of the opinion relative to the subject in detail. The court, in discussing the subject, said: ''Did John E. Weber die testate? The complainant in the original bill, Louis P. Kotz, alleges that John E. Weber died intestate, while all the other appellants except Louis P. Kotz charge in their answers to the cross-bill that John E. Weber died leaving a last will and testament. To sustain the cross-bill, defendants called Henry H. Handy as a witness. He testified he had been an abstracter in the city of Chicago for thirty-seven years, and the custodian of all the abstract books saved from destruction in the great Chicago fire in 1871. He stated there were minutes upon the books of original entry that the estate of John E. Weber was indexed in the estate book of Chase Bros. as pending in the county court of Cook county at the time of the fire; that in other books of original entry of Chase Bros. it appeared that the will of John E. Weber, as document No. 76,413 was recorded in the recorder's office; that by the books of Jones & Sellers, another abstract firm, the will of John E. Weber, dated January 27, 1864, was recorded February 24, 1864, in volume 264, page 32, in the recorder's office of Cook county, as document No. 76,413, thus supplementing and

confirming the memoranda taken from the books of Chase Bros. The evidence further shows that John E. Weber died February 18, 1864; that the will was made January 27, 1864 (about three weeks before his death), and was recorded February 24th—which, taken in connection with the estate book of Chase Bros., can lead to no other reasonable conclusion than that the estate of Weber was pending in the county court of Cook county, and that it must have been probated in the county court and a certified copy recorded in the recorder's office of Cook county. Sections 23 and 24 of chapter 116 (3 Starr & Curtis' Annotated Statutes, second edition, page 3360), entitled 'Lost or Destroyed Records,' provide, in brief, that upon the trial of any suit or proceeding pending in any court of this state, when it shall appear orally in court or by affidavit that the original of any deed or other instrument in writing is lost or destroyed, etc., the court shall receive as evidence any copy, extracts, or minutes from such destroyed records, or from the original thereof. The witness explained the abbreviations and dates, their meaning, etc. This kind of testimony was properly admitted. .This court said in Converse v. Wead, 142 Ill. 132, 31 N. E. 314: 'A witness who was familiar with the system of entries and making of abstracts by the abstract-makers, and knew their rules and had worked with their men before the fire, and had assisted them daily in taking off minutes of the deeds from the records, swore as to these abbreviations,' etc. In Smith v. Stevens, 82 Ill. 554, this court said, with reference to the burned records act: 'The condition of property owners in Chicago after the great fire of October, 1871, was appalling, demanding legislative interference. A great evil had befallen them, which this act was designed to remedy. It is emphatically a remedial act, and, in accordance with a well-established canon, it must receive a liberal construction, and be made to apply to all cases which, by a fair construction of its terms, it can be made to reach.' Certainly a will relating to the title of real estate must be held to come within the scope of this remedial statute. Another witness—Fernando Jones—who had been engaged in the business of making abstracts of title to real estate in Cook county forty years, and prior to October, 1871, under the name of Fernando Jones & Co., and afterward, under the name of Jones & Sellers, testified he knew John E. Weber and remembered his sickness and death; that he saw him during his last illness; and that there was an estate of John E. Weber in the probate court, and that he had a will, and that the will was recorded in the recorder's office. These facts establish beyond question that John E. Weber died testate, and that his will was admitted to probate in Cook county; and that there is nothing in the record tending to prove the allegations of complainants that he died intestate.''

So, also, where a will had been admitted to probate, recorded, deposited with the proper officer for safekeeping, and the public office containing the will and the records was destroyed by fire, a certified copy of the will which has been acted upon by the parties inter-

ested for years has been regarded as sufficient proof, the court observing: "It would be a severe rule which would work great mischief to the citizens to ask higher proof than this": Franklin v. Creyon, Harp. Eq. (S. C.) 243. And where a bill based on an alleged will is filed after a lapse of fifty years after the destruction of the records in the clerk's office through a fire, it will be dismissed where the testimony respecting the lost will is inconsistent and uncertain: Todd's Heirs v. Wickliffe, 12 B. Mon. 289.

In Smith v. Carter, 3 Rand. 167, a will which was probated was destroyed, together with all the records by a fire during the war of the Revolution, but the court allowed parol proof of its contents on the ground that it was the best evidence that the nature of the case afforded.

Where the original will and the record-books in which it was recorded were destroyed by Sherman's raid during the Civil War, and a certified copy of the original will was afterward recorded, and the book in which it was recorded was accepted by the bar and citizens of the county as containing the best attainable evidence of the records that were destroyed by the raid, and the executor of the will acted under the recorded copy of the will, the court will regard the recorded copy as a true copy of the destroyed will: Howard v. Quattlebaum, 46 S. C. 95, 24 S. E. 93.

**Proceedings for the Probate of Lost or Destroyed Wills—What Courts have Jurisdiction.**—Considerable diversity of opinion has existed as to whether a court of equity or a court of probate had exclusive jurisdiction of proceedings to establish lost or destroyed wills. The matter, however, is generally regulated by local statutes. The subject was extensively reviewed in Dower v. Seeds, 28 W. Va. 113, 57 Am. Rep. 646, and the court announced the following to be the rule in such cases: "My conclusion then is, that in the various states of the Union, chancery courts have, and ought to have, jurisdiction to set up and establish wills, which have been lost, suppressed or destroyed, except where by some peculiar provision of the statute law equity courts have in such cases concurrent jurisdiction with the chancery courts, unless their jurisdiction is so restricted by statutory law as to clearly indicate that the legislature did not design in any case to permit them to admit to probate a lost or destroyed will. These conclusions, it seems to us, are supported, not only by reason, but also by the great weight of authority."

The jurisdiction to prove a will is not lost merely because the will is lost or destroyed. The only difference between the probate of a will which can be produced and one which cannot is with respect to the nature and quantity of proof to be adduced: McCormick v. Jernigan, 110 N. C. 406, 14 S. E. 971. Courts of equity exercised jurisdiction of proceedings to establish lost or destroyed wills in the following cases: Jones v. Casler, 139 Ind. 382, 47 Am. St. Rep. 274, 38 N. E. 812; Bailey v. Stiles, 2 N. J. Eq. 220; Buchanan v. Matlock, 8 Humph.

390, 47 Am. Dec. 622; but such jurisdiction was denied, in Clarke v. Clarke, 7 R. I. 45; Matter of Sinclair's Will, 5 Ohio St. 290.

In the late case of Ewing v. McIntyre, 133 Mich. 459, 95 N. W. 540, the court, in discussing the jurisdiction of probate courts in such proceedings, said: "The jurisdiction to admit wills to probate is now quite generally conferred upon probate courts, and in other states this extends to lost and destroyed wills, in some cases depending upon statutes expressly conferring such jurisdiction; in others, under general statutes authorizing the probate of wills and administration of estates. We are of the opinion that the weight of authority sustains the jurisdiction under such general statutes, notwithstanding the case of Buchanan v. Matlock, 8 Humph. 390, 47 Am. Dec. 622, which holds the contrary: Morningstar v. Selby, 15 Ohio, 345, 45 Am. Dec. 579; Gaines v. Chew, 2 How. 619, 11 L. Ed. 402; Gaines v. Hennen, 24 How. 553, 16 L. Ed. 770; Waters v. Stickney, 12 Allen, 1, 90 Am. Dec. 192; Clark v. Wright, 3 Pick. 67; Davis v. Sigourney, 8 Met. 487; Happy's Will, 4 Bibb, 553; Graham v. O'Fallon, 3 Mo. 507; Apperson v. Cottrell, 3 Port. 51, 29 Am. Dec. 239; Thornlin on Lost Wills, secs. 5, 6, where the above cases are reviewed. Extended discussions of the subject will be found in several of these cases, especially Adams v. Adams, 22 Vt. 50, and Dower v. Seeds, 28 W. Va. 113, 139, 143, 57 Am. Rep. 646. In Michigan the statute confers in general language upon probate courts authority to probate wills and settle estates: Comp. Laws, secs. 650, 651. In Lloyd v. Wayne, Circuit Judge, 56 Mich. 243, 56 Am. Rep. 378, 23 N. W. 28, 31, Mr. Justice Campbell says: 'There never has been any proceeding known to our laws for the mere purpose of establishing the will even of a deceased person. The probate of wills under our statutes is merely a part of the proceedings to administer the estates of deceased persons in the court that has jurisdiction and charge of such estates. This rule is so general that in some states devises are not probated at all, and in some the probate is not conclusive, because controversies concerning land are usually tried in other courts. We have enlarged the jurisdiction in probate so as to reach lands for some purposes, and have made all wills subject to probate. But there is no case where an original probate can -be granted here, except in the court having jurisdiction over the estate; it cannot be done separately.' "

As a general rule, courts of equity have disclaimed jurisdiction over the probate of wills: Monographic note to Froebrich v. Lane, 106 Am. St. Rep. 643.

**Right of Action and Parties to Proceeding.**—If, upon the face of the will propounded, the proponent has a probable interest in its establishment, he may maintain the action: Donlon v. Kimball, 61 App. Div. 31, 70 N. Y. Supp. 252. A petition to prove the existence of a lost will may be filed without first attacking and setting aside the proceedings whereby the succession of the testator had been administered and closed and the property divided amongst the heirs at law: In re Sprowl's Will, 109 La. 352, 33 South. 365.

The legatees, devisees and the heirs at law are all proper parties to a proceeding to establish a lost or destroyed will: In re Valentine's Will, 93 Wis. 45, 67 N. W. 12.

**Matters Relating to Form of Proceeding or Petition.**—Proceedings to establish a prior will alleged to have been fraudulently destroyed and to set aside a subsequent will are properly joined: Bowen v. Idley, 6 Paige Ch. 46. A petition for the probate of a lost will which alleges that the heirs of the testatrix after her death knowingly and fraudulently burned and destroyed her will sufficiently avers that it was in existence at the time of her decease: Jones v. Casler, 139 Ind. 382, 47 Am. St. Rep. 274, 38 N. E. 812. The question whether a will was in existence at the date of the testator's death or not is one of fact: Lane v. Hill, 68 N. H. 275, 73 Am. St. Rep. 591, 44 Atl. 393.

**Manner of Examining Witnesses and Their Right to Refresh Memory.**—The mere fact that a witness testifying to the execution and contents of a will instead of reciting its provisions stated that they were the same as those contained in a copy which was shown him, is not objectionable where this method of examination of the witness was not objected to: In re Granacher's Will, 74 App. Div. 567, 77 N. Y. Supp. 748.

And where an attorney who drew the will uniformly used a form book in drawing wills of the character of the one in issue, he may use such form book in connection with memoranda given him by the testator, to refresh his memory in testifying to the contents of the lost will: Southworth v. Adams, 11 Biss. 256, Fed. Cas. No. 13,194.

But a subscribing witness testifying to the contents of the lost will is not entitled to refresh his memory during his examination as a witness from a copy of the will, which is not known or recognized by him nor verified as a true copy of the will: Jaques v. Horton, 76 Ala. 238.

**Right of Distant Heir to Appeal.**—Where, at the time a copy of a lost will was admitted to probate, an heir was living in a mountainous district of a distant state, where she could not get legal advice and was ignorant of her rights, it was held that it was an abuse of discretion in the circuit court not to allow an appeal from the order admitting the will to probate within a year thereafter: Jamison v. Snyder, 79 Wis. 286, 48 N. W. 261.