MARSHALL v. MARSHALL.

1. WILL—PERIOD OF SURVIVORSHIP—CASES CRITICISED.—Testator devised a plantation to his wife for life, with remainder to his sons W. and J., and by a later clause directed that if J. die leaving no children to inherit this land at his death, the same to be sold and the proceeds divided between his son S. and his three daughters. *Held*, that the will (especially when interpreted in the light of the fact that at the date of the will it seemed probable that J. would never have a child) gave a fee in his one moiety in this plantation to J. on the death of his mother, but such fee was made

defeasible by the later clause if J. died at any time without children, this contingency not being limited to his mother's lifetime. This case distinguished from Presley *v.* Davis, 7 Rich. Eq., 105, and Vidal *v.* Verdier, Speer Eq., 402.

2. EXCEPTIONS—FINDINGS OF FACT.—Error will not be declared in the failure of the Circuit Judge to pass specifically upon objections interposed to testimony taken before the clerk of court, where the grounds of objection were not specified, and there was quite enough proper testimony to sustain the findings of the Circuit Judge.

3. LOST WILL—ORDER AND QUANTUM OF PROOF.—It is not reversible error that testimony taken before the clerk of the Circuit Court was introduced to prove the contents of a will in advance of evidence to establish its existence and loss; and very strict proof of execution will not be required where one of the witnesses is dead and the other two have not been heard of for twenty years, and the parol proof shows that the will had been admitted to probate, and that both will and probate had been destroyed.

4. APPEAL.—A question not considered where it was not raised nor considered on Circuit, and not made the ground of any exception.

5. IBID.—CORRECTED ERROR.—An inadvertent error in this case was rectified by consent of respondent's counsel, entered upon the record.

Before GARY, J., Lancaster, January, 1894.

Action by Mary Marshall and others against Thomas J. Marshall and others, commenced January 31, 1891.

*Messrs. Jones & Williams*, for appellants.

*Messrs. R. E. & R. B. Allison* and *Wylie & Wylie*, contra.

November 2, 1894. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. This was an action for the sale of a certain tract of land, situate in Lancaster County, and for a division of the proceeds of such sale amongst the several parties entitled thereto, under an alleged will of one John Marshall, in certain proportions mentioned in the complaint, and also for an account of the rents and profits of the said land from such of the parties as have used and occupied the same, since the interests of the plaintiffs have become vested, as alleged. The appellants answered, denying all the allegations of the complaint, and claiming that they are exclusively entitled to the land in question under the will of one John W. Marshall.

The testimony was taken—the most of it—by the clerk under the provisions of sec. 2210 of Gen. Stats. of 1882, and the same was heard upon this, with some additional taken at the hearing, by his honor, Judge Gary, who rendered his decree, holding that, while much of the testimony taken by the clerk is inadmissible under sec. 400 of the Code, there was abundant evidence, which is free from objection, that John Marshall made his will during the year 1849, and died in April of the same year; that soon thereafter his will was duly admitted to probate in the proper office; that the original will was either lost or destroyed during the recent war; that its contents have been properly proved, and he, therefore, found "that John Marshall left a last will and testament, and that the same was properly admitted to probate, and that exhibit A of the plaintiffs' complaint contains a correct copy of the provisions of the same." Proceeding, then, to consider what was the proper construction of the will, he held that the land in question was devised to the testator's widow for life, with remainder to his son, John W. Marshall, in fee defeasible, if he should die without children; and that the widow having died in 1864, and the said John W. Marshall having died in 1888, without children, under the limitation in the eleventh clause of the will, the land should be sold, and the proceeds divided as directed in the said clause. He, therefore, rendered judgment that the land be sold, and the proceeds be paid over "to the plaintiffs or their attorneys, in accordance with their interests as set out in the complaint;" and reserved the question as to the rents and profits until a further order of the court, as there was not sufficient evidence before him to adjudicate that issue.

From this judgment the appellants have taken this appeal, based upon numerous exceptions set out in the record. It is proper here to note that a manifest inadvertence in the decree, whereby the proceeds of the sale were directed to be paid over to the plaintiffs only, has been corrected by a notice, served on appellants' attorney, and incorporated in the record, to the effect "that the plaintiffs conceded the right of all the defendants to take such share of the proceeds of the land according to their interests therein as set forth in the complaint, and their will-

ingness that an order be taken, on the part of the defendants, directing the clerk of the court to pay over to them their share of the proceeds, in conformity to the allegations and prayer of the complaint." The exceptions raise two general questions: 1st. As to the competency and sufficiency of the evidence offered to establish the will of John Marshall. 2d. As to the proper construction of that will.

We will consider the second question first, as that question is raised by one of the exceptions in the nature of a demurrer, upon the ground that the complaint does not state facts sufficient to constitute a cause of action. For if the construction of the will contended for by appellant is sound, then it is obvious that the plaintiffs have no rights, so far as the land in question is concerned, under the will as set forth in the exhibit to the complaint. To determine the question as to the proper construction of the will, it is only necessary to set forth three clauses of the will, which read as follows: "3rd I leave to my beloved wife her lifetime the plantation whereon I now reside," besides certain personal property therein mentioned. "6th I give to my beloved sons Wm. K. and John W. Marshall at the death of my wife the residue of my land being the plantation whereon I now live commencing at the Hickry corner mentioned in Robert's tract to extent of my land boundary west of the Potter road, the same to be equally divided between them giving John the side next W. W. Bell's with these considerations, that each one pay to me or my executor the sum of sixteen dollars yearly commencing on the first of Jan. 1849 for the support of myself and wife during my lifetime and the lifetime of my wife should she outlive me they refusing to comply with said terms forfeit so much out of the said lands so given them and by their compliance I give said parcels of land to them and their heirs forever." "11th should my son John W. Marshall die leaving no children to inherit the land left him by me at his death it is my desire and I leave it as my will that the parcel of land so left him by me be sold and the proceeds be equally divided between my son Samuel and my three daughters Mary Susan and Sarah or their heirs."

The practical inquiry is, whether the testator intended, by

the words which he has used in the eleventh clause of his will, that the fee previously given to John W. Marshall by the sixth clause of the will should be defeated by his death without children *during the lifetime of the widow*, or by his death without children *at any time when that event should occur;* for both parties concede, and the Circuit Judge so holds, that John took a fee defeasible upon the happening of one or the other of said contingencies. Now, which of these contingencies did the testator contemplate? Looking at the language he used, especially in the light of the surrounding circumstances, as it is permissible to do, we think there can be no doubt that the testator intended that if John W. Marshall should die at any time without children, *then* the land given him should be sold and the proceeds be equally divided between the persons named in that clause. We see nothing in the clause which warrants the idea that the testator intended that the contingency upon which the estate previously given to John W. Marshall was limited to his death *during the lifetime of the widow*, and to put such a construction upon the will, it would be necessary to interpolate words into the will which no court has the power to do. Indeed, it seems to us that the express language of the clause forbids such a construction, for the direction is, that the land is to be sold at the death of John W. Marshall, which clearly indicates that the testator did not contemplate the death of John W. Marshall, without children, *during the life of the widow*, for that would have defeated the life interest of the widow, which, certainly, the testator did not intend. The undisputed testimony shows that, when the will was made, though John W. was a married man, he had no children, and there was a probability, at least, that he never would have any, as he had married a widow verging upon forty years of age, who had never had a child by either of her husbands, and, therefore, it was quite natural that the testator should contemplate the possibility of his son's death without children, in which event the testator would very naturally desire that the property should go to his other children.

It is earnestly contended, however, that the construction which we have adopted is in conflict with the decisions in this

State, and two cases—*Vidal* v. *Verdier*, Speer Eq., 402, and *Blum* v. *Evans*, 10 S. C., 56—are mainly relied upon by counsel for appellants.    The case of *Presley* v. *Davis*, 7 Rich. Eq., 105, was also cited; but as the provisions of the will there construed are so very different from those of the will upon which we are to pass, it will only be necessary to point out such difference. There the testator, by his will, directed his estate to be equally divided amongst his six children, followed by these words: "If any of the aforesaid children should die, or make their exit without lawful issue, then their portions are to be equally divided among the remainder of the aforesaid children," and it was held that the testator meant, if any of the children should die, *in the lifetime of the testator*, without lawful issue, then, etc. As was said by Wardlaw, Ch., in delivering the opinion of the court, any other view would meet with two insurmountable obstacles: First. "It is the established doctrine, that wherever the gift takes effect in possession immediately on testator's death, words of survivorship refer to the date of testator's death, and are intended to provide for the contingency of the death of the objects of his bounty in his lifetime, unless some other point of time be indicated by the will.  If the enjoyment be postponed by the interposition of a particular interest, such as a life estate, or by fixing a future period for division, such as the attainment of the legatee to full age, then words of survivorship more naturally relate to the period of division and enjoyment."    There the gift took effect in possession immediately on testator's death, without the interposition of any life estate, while here the gift to John W. Marshall did not take effect in possession immediately upon the death of the testator, and the life estate of the widow was interposed.   The second obstacle which the appellants encountered was, that if the construction contended for by them should prevail, the limitation over—dying without lawful *issue*—would be void for remoteness; while here no such consequence would follow, as the limitation here is, die *leaving* no *children*.   It is very manifest, therefore, that the case of *Presley* v. *Davis* is not applicable.

Recurring, then, to the case of *Vidal* v. *Verdier*, *supra*, we find there, too, a striking difference in the phraseology of the

will. There the testator, after giving a life estate to his wife, proceeds as follows: "after the death of my wife, I leave to my nephew, James Felix Vidal, the whole of my estate, both real and personal; but in the case of the death of my nephew, James Felix Vidal, without his leaving a lawfully begotten child or children, then, and in that case, the whole, both real and personal, shall be divided among the rest of my nephews and nieces, share and share alike." The nephew, James Felix Vidal, survived the life tenant, and the question was whether his estate thereby became absolute; and this depended upon the question whether the testator intended that the limitation over to the rest of the nephews and nieces should take effect only in the event of the death of James Felix *during the lifetime of the life tenant*, or in the event of his death *at any time*, without a child or children. The court held, "though not without some degree of doubt and hesitation," as said by Harper, Ch., in delivering the opinion of the court, that James Felix, hav-. ing survived the life tenant, his estate thereby became absolute. It seems to us, that the words, *"but in case of"* the death of James Felix without children, following immediately after the words, "and after the death of my beloved wife, Sarah Bennett, I leave to my nephew, James Felix Vidal, the. whole of my estate, both real and personal"—terms importing an absolute estate—and followed by the words, *"then, and in that case,"* the whole estate be divided amongst the rest of his nephews and nieces, indicate that the testator's intention was to give his whole estate in remainder absolutely to James Felix; but his mind being at the moment directed to the point of time when the widow should die, it very naturally occurred to him that his favorite nephew might then be dead, and, if so, he must make some other disposition of his property, and hence he used the appropriate phrase to meet such a contingency, *"but in case of"* the death of such nephew without children, then the rest of his nephews and nieces should be substituted in his place. In other words, the testator, after giving his whole estate to his wife for life, reached the point when he was to dispose of the remainder at her death, and this he gives to James· Felix absolutely, if he should then be alive, or, if dead, had left

children who would inherit such absolute estate, but contemplating the possibility that James Felix might then be dead without children, he substitutes the rest of his nephews and nieces.

The language of the will of John Marshall, however, admits of no such construction. Here the testator, after giving, by the third clause of his will, the land in question to his wife for life, by the sixth clause he gives the remainder therein, in fee, to his two sons, John W. and Wm. K. Marshall; but contemplating not only the possibility but the probability that John W. might die leaving no children to whom the share of the land would naturally descend, he proceeds, in the eleventh clause, to provide for such a contingency by declaring as follows: "Should my son John W. Marshall die leaving no children to inherit the land left him by me, at his death it is my desire and I leave it as my will that the parcel of land so left him by me be sold and the proceeds be equally divided between my son Samuel and my three daughters, Mary Susan and Sarah or their heirs." There is not a word here to indicate that the testator intended that the son Samuel and the three daughters should take as substitutes for John W., in case he died during the lifetime of the widow. Indeed, the provision that the land be sold at the death of John W., utterly refutes such an idea. In fact, we are unable to discover anything in the terms of the will which countenances the idea that the son Samuel and the three daughters were to take only in the event that John W. should die without children during the lifetime of the widow. On the contrary, the expression is general—should my son, John W. Marshall, die leaving no children—and in the absence of any words limiting that event within a specified period, it must be construed as meaning his death *at any time* leaving no children.

In *Yates* v. *Mitchell*, 1 Rich. Eq., 265, the testator gave one moiety of the annual income of his estate to his wife for life, and the other moiety to his children during the life of his wife, and then provided that after the death of his wife his estate should go to his children in fee, "and should any of my said children die without leaving lawfully begotten issue, living at

the time of his, her, or their death, then the share or shares in my estate of such child or children, so dying as aforesaid, shall go to the survivor or survivors of my said children, and to the issue of such of my said children as may have previously died." It was contended that upon the death of the widow, the estate of a child who survived her became absolute, and the case of *Vidal* v. *Verdier, supra,* was relied upon to support that view, but the court held that that case did not apply, and upon the death of any of the children, *at any time,* without issue, the share of the child so dying would go over to the survivors. It seems to us that *Yates* v. *Mitchell* is much more like the present case than *Vidal* v. *Verdier.* Harper, Ch., in delivering the opinion of the court in *Yates* v. *Mitchell,* said that the case of *Vidal* v. *Verdier,* in which he had likewise delivered the opinion of the court, "was decided on this principle—that when a testator, giving in remainder after an estate for life, uses one set of expressions denoting that the remainderman is to take an absolute estate, and another set of expressions limiting him to an estate for life, with remainder to his issue, and a limitation over in the event of not having issue, this apparent repugnancy may be reconciled by restricting the dying without issue to the lifetime of the tenant for life, thus permitting every part of the will to have its proper effect. If he dies during the lifetime of the tenant for life, leaving issue, the issue will take as purchasers under the will—if without issue, the limitation over will have effect; but if he survives the tenant for life, the estate is absolute. Such is in every case a reasonable and probable intention; and in that case there were circumstances to satisfy me very fully that such was the actual intention."

It is very obvious that the case of *Vidal* v. *Verdier* thus explained cannot control the present case. For here there are not two sets of expressions—one denoting that John W. Marshall was to take an absolute estate, and the other limiting him to an estate for life, with remainder to his issue, and a limitation over upon failure of issue. On the contrary, it is clear that John W. Marshall, by the sixth clause, took an estate in fee simple, after which there could be no remainder to his issue; but by the operation of the eleventh clause, such fee became

defeasible upon his death without children, whenever that event might happen. *Carson* v. *Kennerly*, 8 Rich. Eq., 259; *Thomson* v. *Peake*, 38 S. C., 440. The case of *Blum* v. *Evans*, 10 S. C., 56, resting mainly, if not entirely, upon *Vidal* v. *Verdier*, need not be considered.

We agree, therefore, with the Circuit Judge in the construction which he has placed upon the will of John Marshall, and the twenty-first ground of appeal, which is in the nature of a demurrer, cannot be sustained.

It is necessary, therefore, to consider next whether that will has been properly established. As has been stated, much the greater portion of the testimony was taken before the clerk, and very numerous objections to the testimony were taken and noted; but these objections were of the most general character, and, therefore, it is not surprising that the Circuit Judge took a very general view of the objections, for it does not appear that he was called upon to rule upon any specific objection based upon any particular ground. It is somewhat difficult, therefore, for us to perceive how any specific error can be imputed to the Circuit Judge in admitting or rejecting any testimony. There can be no doubt that much of the testimony taken by the clerk was, as the Circuit Judge says, inadmissible, under sec. 400 of the Code; but we agree with him, that there was quite sufficient testimony, open to no valid objection, to establish the will. We shall not undertake to consider all the various objections seriatim presented by the numerous exceptions, but propose rather to classify them. It seems to us that these exceptions may be reduced to the following classes: 1st. Those which are inadmissible under sec. 400 of the Code. 2d. Those which are objected to as mere hearsay evidence. 3d. Objections raised to the order in which the testimony was taken. As to the first class, we think that wherever any party to the cause was permitted to testify as to any transaction or communication had with a person then deceased under whom the appellants claim as devisees, such testimony should be, and has been, rejected as incompetent. For example, whenever any party to the cause was permitted to testify as to any transaction or communication with John W. Marshall, such

testimony should be rejected.   Second. All mere hearsay testimony, as, for instance, that of Croxton, should be, and has been, rejected as incompetent.   But this does not include the declarations or admissions of the appellants, or the declarations or admissions of John W. Marshall, when proved by persons not parties to the cause, and not having any legal interest therein.

Third.  While it is quite true, that when it is proposed to set up a lost will or other paper, the proper course is first to prove the existence and loss of such paper before offering any evidence as to its contents, yet where, as in this case, the testimony was taken before the clerk and not before a jury, a departure from this order will not constitute reversible error, provided proper testimony is introduced showing the existence and loss of the paper.   In this connection, it will be well to note that it is earnestly contended that there was no legal evidence of the execution of this will.   But, when it is remembered that this will was alleged to have been executed upwards of forty years ago, and that one of the subscribing witnesses was dead, and that the other two had left this country and had not been heard of in more than twenty years, and, therefore, in the eye of the law, could be regarded as dead, it could not be expected that very strict and ample proof could have been made as to the formal execution of the will.   But, as it has been held in *Prater* v. *Whittle*, 16 S. C., 40, and *Rumph* v. *Hiott*, 35 S. C., 444, that the admission of a will to probate supersedes the necessity for formal proof of its execution, especially after such a lapse of time; and, as we think, there was quite sufficient evidence that this will had been admitted to probate, and that the same, as well as the record thereof, had been destroyed during the recent war, it seems to us that the way was open to adduce evidence as to the contents of the will, which we think was fully established.

It was contended in the argument here, that the appellants had a right to have the question of their exclusive title to the land passed upon by a jury; but as no question of this kind seems to have been raised in the court below, and as the Circuit Judge was not called upon to make, and

did not make, any ruling upon that point, and as there is no exception raising any such point, the question is not properly before us, and we have no power to consider or determine it in this case.

The point raised by the twentieth exception as to the inadvertent error in the Circuit decree, in directing the proceeds of the sale to be paid over to the plaintiffs, has already been disposed of by the consent of the plaintiffs to the rectification of such error, entered upon the record, as hereinbefore stated.

The judgment of this court is, that the judgment of the Circuit Court, as modified by the consent of the plaintiffs entered upon the record, be affirmed.