8622

BISCHOFF v. ATLANTIC REALTY CORPORATION.

WILLS—LIMITATION OF ESTATES—FEE DEFEASIBLE.—In a will providing in one clause that "all the rest and residue of my real estate * * * I give and bequeath unto my beloved wife * * * that is to say during her natural life * * * and after her death * * * to be equally divided between my * * * children," naming them, and in the following clause: "In case any of our children should die and not leave any issue living then his or her share or part shall be equally divided between our children then living or their issue * * * the issue, if any, are entitled and receive the parent part," the word "then" in the last clause refers to the dying of the children of the testator at any time. Cases considered.

*Blum* v. *Evans,* 10 S. C. 56, *held to have been overruled by Marshall* v. *Marshall,* 42 S. C. 436.

MR. JUSTICE FRASER *dissents.*

Before DEVORE, J., Charleston, April, 1913. Reversed.

Controversy without action by Albert Bischoff, Anna M. S. Hessemann, J. Edwin Bischoff, and Julia W. Otzen against Atlantic Realty Corporation. Defendant appeals.

The will in question is:

"The State of South Carolina, In the Name of God, Amen.

"I, Albert Bischoff, of the city of Charleston, S. C., and State aforesaid, being of sound mind and memory, and considering the uncertainty of this frail and transitory life, do therefore ordain, publish and declare this to be my last will and testament in the following manner:

. Item 1st. "I will and direct that my funeral expenses, and all my other just debts be paid immediately after my death, or as soon thereafter as it can conveniently be done, without making any unnecessary sacrifices for that purpose.

Item 2d. "All the rest and residue of my real estate and personal property whatsoever, I give and bequeath to my beloved wife, Anna Martha Bischoff; that is to say, to enjoy the income thereof, after tax, insurance and repairing of

buildings is paid, during her natural life, for her and her children support and for the education of our beloved children, and after her death the whole real estate and personal property, to be equally divided between our beloved children, share and share alike, viz.: Anna Matilde, Albertine, now married to John Godfried Steenken in Brooklyn, Julia Wilhelmine, Martha Caroline, Anna Matilda Sophia, Carl William, John Godfried, and also if we should have any more born after this my last will and testament is made, all shall share alike.

Item 3d. "In case any of our children should die, and not leaving any issue living then his or her share or part, shall be equally divided, between our children then living, or their issue share and share alike, the issue if any are entitled and receive the parent part.

Item 4th. "It is my will that my executrix and executor hereinafter named keep together my real estate, and rent or lease the same to the best advantage, and use the same or the net proceeds as hereinabove stipulated.

Item 5th. "It is my will in case my dear wife, the said Anna Martha Bischoff, should be dissatisfied with the written stipulation of disposition of my estate, she shall have the full power and right to waive and relinquish her claim stipulated herein, and when that is done to have her full claim to her dower in or to said property according to the statute and regulation and law of the State of South Carolina, which the Judge of the Probate will then decide in Charleston, S. C.

Item 6th. "It is my will that my executrix and executor shall invest my personal property in real estate, bond or mortgage, or other good security, according to their own best judgment, excepting household furniture, my dear wife has the full right and power to do with it as she may like best.

Item 7th. "I nominate, constitute and appoint my dear wife, Anna Martha Bischoff, my executrix, and John God-

fried Steenken my executor, of this my last will and testament, in witness whereof I have hereunto set my hand and seal at Charleston, S. C., April (25th) twenty-fifth (1873) eighteen hundred and seventy-three.

Albert Bischoff [L. S.]"

The Circuit decree is:

"This is a controversy without action submitted to me by the attorneys representing the parties hereto for construction of the will of the late Albert Bischoff.

"The testator devises his property by said will, to his wife, Anna Martha, for life, and after her death directs the whole property to be equally divided between beloved children, naming them, share and share alike, with provision that if any children should be born after his will, all should share and share alike. The life tenant is dead and this provision of his will, if not qualified in any way, would give to the plaintiffs in this case under the facts presented to the Court a fee simple title to the property in question.

"The testator, however, goes on to say in item 3d of his will: 'In case any of our children should die, and not leaving any issue living then his or her share or part, shall be equally divided between our children then living, or their issue share and share alike, the issue if any are entitled and receive the parent share,' and the question has been made as to whether the testator intended the first clause in said item to mean, in case any of his children should die prior to the death of the life tenant, thus giving the plaintiffs a fee simple title in said property, or whether he intended to mean in case any of his children should die *at any time* not leaving issue, thus giving them a fee defeasible on their death without issue.

"There are two principles which the Supreme Court has laid down in construing wills of this kind:

*First.* "That the law favors an early vesting of estates and abhors perpetuities, restrictions and hindrances to enjoyment of estates. *Durant* v. *Nash,* 30 S. C., p. 192.

*Second.* "That when a gift is made in one clause of a will in good and unequivocal terms, the quantity or quality of the estate should not be cut down or qualified by words of doubtful import found in a subsequent clause. *Walker* v. *Anderson,* 87 S. C., p. 60; *Smith* v. *Smith,* 93 S. C., p. 216.

"With these principles in mind, let us look at certain cases decided by our Supreme Court. In *Pressly* v. *Davis,* 7 Rich. Eq., p. 105, testator devised his property to *six children* and says: 'If any of the aforesaid children should die or make their exit *without lawful issue,* then *their portions* are to be equally divided among the remainder of the aforesaid children.' The Court held that the testator meant if any children should die *in lifetime* of testator.

"In *Vidal* v. *Verdier,* Speer Eq., p. 402, testator gives property to wife for life, and at her death to nephew, Jas. F. Vidal, but in case he die without leaving a lawfully begotten child, *then and in that case* the whole shall be divided among the rest of my nephews, etc. Held that Jas. F. Vidal, having survived the life tenant, took a fee simple.

"In *Blum* v. *Evans,* 10 S. C., p. 56, the devise was to wife for life and at her death to daughter, 'Should my daughter die without issue I wish my entire estate to be divided equally among the Horlbecks, etc.' Court held that daughter having survived the mother became vested with a fee simple title. In this case the act of 1853 was in force so that with this language in mind, the will would read 'Should my daughter die without issue living at the time of her death, then I wish my estate divided, etc.'

"The case at bar says: 'In case any child should die and not leave any issue living then his share shall be divided between our children *then* living.' Does the word 'then' add any new meaning? I do not think so. *Mangum* v. *Piester,* 16 S. C., p. 329, says the word 'then' 'has no power in itself to fix a time, it simply refers to a time already

fixed, etc., etc.' It seems to me that the principle in the case at bar is exactly involved in the case of *Blum* v. *Evans*. The case of *Mangum* v. *Piester,* 16 S. C., p. 316, can have no weight here as that involved a will prior to 1853 and it held that this clause was void as it meant an indefinite failure of issue. The Court in that case, at page 320, refers to *Blum* v. *Evans,* and says it was decided in the light of the act of 1853.

"The case of *Marshall* v. *Marshall,* 42 S. C., p. 436, is interesting. The testator there gives property to wife for life with remainder to sons, W. and J., and by later clause directed that if W. and J. die leaving no children to *inherit* this land the same shall be sold and proceeds divided, etc. The Court held that this clause meant dying at any time. Here the Court reviews the previous authorities and draws the distinction between this case and that of *Blum* v. *Evans,* etc., and holds that where testator uses such words 'as in case of,' etc., showing that he intended a substitution of parties in place of first takers, the words 'dying without issue' would be referred to a time prior to death of testator or of life tenant, but where no such intended substitution was shown, as where he directed the land sold and proceeds divided, that it would be referred to the death at any time.

"In the case at bar, the testator used the expression 'in case any of our children should die, etc.,' and directs how the shares 'shall be divided.'

"It seems to me that the testator clearly intended to give his estate to his children after the death of his wife in fee simple. This is evident by clause two of his will. It then occurred to him that possibly some of his children might not be alive at the period that he had fixed for distribution, to wit: the death of the life tenant, and he therefore says, 'in case any of them should die not leaving issue, etc.,' clearly, to my mind, intending that the others should take by way of substitution in case any of his children should not be alive at the time of the death of the life tenant.

"This seems to be evident, because if the testator intended that his children should not have a fee simple in the property he did not accomplish his purpose, because under such a construction he provided that if any of his children should die without issue, then such a child's share would go to the others in fee simple, thus making complications arise on the death of any child without issue as a portion would be held by the others in fee simple and the other portion held in fee defeasible.

"Taking, therefore, the will as a whole, and endeavoring to make all portions of same consistently harmonize, I think it was the intention of the testator in item 3d to provide for the contingency of any of his children dying prior to the time of distribution, to wit: the death of the life tenant, and I so hold.

"It is, therefore, ordered and decreed that the plaintiffs herein be adjudged under the terms of the will of the said Albert Bischoff to own a fee simple in the real property of which the late Albert Bischoff died seized and possessed, and in the absence of any questions other than those arising under the construction of said will, can convey a good and marketable title to the defendant to the premises described in the agreed case herein."

*Messrs. Nathans & Sinkler* and *James Simons,* for appellant, cite: 87 S. C. 60; 7 Rich. Eq. 105; Speer's Eq. 402; 10 S. C. 56; 42 S. C. 440; 16 S. C. 316; 42 S. C. 436.

*Messrs. VonKolnitz & VonKolnitz, Ficken & Erckmann,* and *J. K. P. Bryan,* contra.

The two former cite: 87 S. C. 60; 93 S. C. 216; 30 S. C. 192; 6 Rich. Eq. 83; 7 Rich. Eq. 105; Speer Eq. 402; 10 S. C. 56; 16 S. C. 316; 42 S. C. 436.

*Mr. Bryan* cites, in addition: 7 Rich. Eq. 105; Theobold on Wills, 7 Ed. 659; 7 W. R. 541.

July 24, 1913.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE GARY.   This is a controversy without action, under sections 413 and 414 of the Code of Procedure, for the purpose of determining whether the plaintiffs who entered into an agreement with the defendant to sell the land described in the complaint, have such a marketable title, as the defendant is bound to accept.

Albert Bischoff departed this life, leaving of force his last will and testament, the second and third items of which are as follows:

Item 2d. "All the rest and residue of my real estate and personal property whatsoever, I give and bequeath unto my beloved wife, Anna Martha Bischoff, that is to say, during her natural life, and after her death, the whole real and personal property to be divided equally, between my beloved children, share and share alike, viz.: (naming them)."

Item 3d. "In case any of our children should die and not leave any issue living, then his or her share or part shall be equally divided between our children then living or their issue, share and share alike, the issue if any are entitled and receive the parent part."

The question submitted to the Court was: "Whether or not under the terms of said will, the testator intended the first clause in item third to mean, in case any of his children should die at or prior to the time of the death of the life tenant, or whether or not he intended the said clause in said item to provide, in case any of his children should die at any time and not leaving issue, etc., and whether or not, under the terms of said will, the plaintiffs in this case (who survived the life tenant) have a fee simple title."

His Honor, the presiding Judge, in concluding his decree, thus ruled:

"Taking, therefore, the will as a whole, and endeavoring to make all portions of same consistently harmonize, I think it was the intention of the testator in item 3d, to

provide for the contingency of any of his children dying, prior to the time of distribution, to wit: the death of the life tenant, and I so hold."

The defendant appealed, and said conclusion is assigned as error.

Section 3551, Code of Laws (1912), and known as the act of 1853, is as follows: "Whenever in any will of a testator, hereafter dying, an estate either in real or personal property, shall be limited to take effect, on the death of any person without heirs of the body, or issue, or issue of the body, or other equivalent words, such words shall not be construed to mean an indefinite failure of issue, but a failure at the time of the death of such person."

The words, "The issue if any are entitled and receive the parent part," refer solely to the manner of distribution and were intended to indicate that the share of a child dying without issue, should be divided between the testator's children then living, and the issue of testator's children then dead, *per stirpes* and not *per capita*.

The third section of the will must be read, as if the provisions of section 3551, Code of Laws (1912), were incorporated in it, which would then read as follows:

"In case any of our children should die, and not leaving any issue living at the time of the death of such person, then his or her share or part, shall be equally divided between our children then living, or their issue, share and share alike, the share of a child dying without issue living at the time of the death of such person, to be divided between the testator's children then living, and the issue of the testator's children then dead, *per stirpes* and not *per capita*."

The Court thus construed the word "then" in *Mangum* v. *Piester*, 16 S. C. 316: "The word, as an adverb, means 'at that time,' referring to a time specified, either past or future. It has no power in itself to fix a time. It simply refers to a time already fixed. The question here is: What

time do the words 'dying without issue' unqualifiedly fix?
Do they fix an indefinite period, when there shall be no
issue, or do they fix a definite period, to wit: the death of
W. B. Griffin? They must have been used with reference
to one or the other, and, having been thus used, the adverb
*then* following them, would refer to the one or the other
as their proper construction might indicate as the time
intended. To assume that the use of the word would, in
itself, fix a certain time, and then refer to it, would be
giving it a double significance, of which it is not suscepti-
ble."

The only reasonable construction of the word "then" in
the 3d clause of the will, is that it had reference to the
words "dying without issue living at the time of the death
of such person," thus precluding the idea that it had refer-
ence to dying without issue in the lifetime of the life tenant.

The leading case upon which the respondent's reply, is
*Vidal* v. *Verdier,* Speer's Eq. 402, in which the devise was
as follows: "I give, devise and bequeath unto my beloved
wife, Sarah Bennett, the use of all and singular my estate,
both real and personal, whatsoever and wheresoever, during
her natural life, and after the death of my beloved wife,
Sarah Bennett, I leave to my nephew, James Felix Vidal,
the whole of my estate, both real and personal; but in case
of the death of my nephew, James Felix Vidal, without his
leaving a lawfully begotten child, or children, then and in
that case, the whole, both real and personal, be divided
among the rest of my nephews and nieces, share and share
alike. And be it further understood, that in case of the
death of my nephew, James Felix Vidal, leaving a lawfully
begotten child, or children, then and in that case, the whole
property, both real and personal, shall be divided between
them, share and share alike." * * *

The last sentence thereof, is what specially distinguishes
that case from the one now under consideration.

The case of *Vidal* v. *Verdier,* Speer's Eq. 402, was thus explained by Chancellor Harper (who wrote the opinion in that case), in *Yates* v. *Mitchell,* 1 Rich. Eq. 265:

"That case was decided on this principle—that when a testator, giving in remainder after an estate for life, uses one set of expressions, denoting that the remainderman is to take an absolute estate—and another set of expressions limiting him to an estate for life, with remainder to his issue, and a limitation over in the event of not having issue; this apparent repugnancy may be reconciled, by restricting the dying without issue, to the lifetime of the tenant for life, thus permitting every part of the will to have its proper effect.   If he dies during the lifetime of the tenant for life, leaving issue, the issue will take as purchasers under the will—if without issue, the limitation over will have effect; but if he survives the tenant for life, the estate is absolute. Such is, in every case, a reasonable and probable intention; and in that case, there were circumstances, to satisfy me very fully, that such was the actual intention."

He then proceeds as follows, to show the difference in the case then under consideration, and that of *Vidal* v. *Verdier,* Speer's Eq. 402:

"But this has nothing to do with the case before us—though in another and peculiar sense, different from that in which the words are used in *Vidal* v. *Verdier,* the devisee, in one event, is said to be restricted by the terms of the will to a life estate.   It enters into the very definition of an executory devise, that a fee simple or absolute estate may be given, with a provision that it shall determine and go over on a future contingency—most commonly, the contingency of dying without leaving issue; and this is what is very clear in the present instance.   The testator devises to his children 'their heirs, executors, administrators and assigns forever.'   He gives an absolute estate, and an absolute estate only—though, to be sure, it may be said that in one event it turns out to be no more than a life estate.

In a sense still somewhat different, every man may be said to have only a life estate in any of his property. *In the present case, if the devisee had left issue, his estate would have been absolute, so that he might dispose of it at his pleasure, to his issue or any one else.* In Vidal v. Verdier, *on any other construction than that which was adopted, he could have had an absolute estate in no event whatever.*" (Italics added.)

In *Marshall* v. *Marshall*, 42 S. C. 436, 20 S. E. 298, the Court had under consideration the will of John Marshall, which contained these clauses:

3d. "I leave to my beloved wife her lifetime, the plantation whereon I now reside." 6th. "I give to my beloved sons, Wm. K. and John W. Marshall, at the death of my wife, the residue of my land, being the plantation whereon I now live, commencing at the Hickory corner mentioned in Robert's track to extent of my land boundary west of the Potter road, the same to be equally divided between them, giving John the side next to W. W. Bell's, with these considerations, that each one pay to me or my executors the sum of sixteen dollars yearly, commencing on the first of January, 1849, for the support of myself and wife during my lifetime, and the lifetime of my wife, should she outlive me, they refusing to comply with said terms, forfeit so much out of the said lands so given them, and by their compliance, I give said parcels of land to them and their heirs forever." 11th. "Should my son, John W. Marshall, die, leaving no children to inherit the land left him by me at his death, it is my desire, and I leave it as my will, that the parcel of land so left him by me, be sold and the proceeds be equally divided between my son, Samuel, and my three daughters, Mary, Susan and Sarah, or their heirs."

Chief Justice McIver, who delivered the opinion of the Court, thus states the question then under discussion:

"The practical inquiry is, whether the testator intended by the words which he has used in the eleventh clause of

the will, that the fee previously given to John W. Marshall by the sixth clause of the will, should be defeated by his death without children, during the lifetime of the widow, or by his death without children, at any time when that event should occur; for both parties concede, and the Circuit Judge so holds, that John took a fee defeasible upon the happening of one or the other of said contingencies."

He then proceeds as follows to comment on the cases of *Vidal* v. *Verdier,* 1 Speer's Eq. 402, and *Yates* v. *Mitchell,* 1 Rich. Eq. 265.

"In *Yates* v. *Mitchell,* 1 Rich. Eq. 265, the testator gave one moiety of the annual income of his estate to his wife for life, and the other moiety to his children during the life of his wife, and then provided that after the death of his wife, his estate should go to his children in fee (and should any of my said children die without leaving lawfully begotten issue, living at the time of his, her, or their death, then the share or shares in my estate of such child or children, so dying as aforesaid, shall go to the survivor or survivors of my said children, and to the issue of such of my said children, as may have previously died). It was contended that upon the death of the widow, the estate of a child who survived her became absolute, and the case of *Vidal* v. *Verdier, supra,* was relied upon to support that view, but the Court held that that case did not apply, and upon the death of any of the children, at any time, without issue, the share of the child so dying would go over to the survivors. It seems to us that *Yates* v. *Mitchell* is much more like the present case than, *Vidal* v. *Verdier."*

After quoting the language of Chancellor Harper in *Yates* v. *Mitchell,* 1 Rich. Eq. 265, explanatory of *Vidal* v. *Verdier,* Speer's Eq. 402, he then says:

"It is very obvious that the case of *Vidal* v. *Verdier,* thus explained, cannot control the present case. For here there are two sets of expressions—one denoting that John W. Marshall was to take an absolute estate, and the other limit-

ing him to an estate for life, with remainder to his issue, and a limitation over upon failure of issue. On the contrary, it is clear that John W. Marshall, by the sixth clause, took an estate in fee simple, after which there could be no remainder to his issue; but by the operation of the eleventh clause, such fee became defeasible upon his death without children, whenever that event might happen. *Carson* v. *Kennerly,* 8 Rich. Eq. 259; *Thomson* v. *Peake,* 38 S. C. 440. The case of *Blum* v. *Evans,* 10 S. C. 56, resting mainly, if not entirely, upon *Vidal* v. *Verdier,* need not be considered."

In the case of *Mangum* v. *Piester,* 16 S. C., Chief Justice Simpson, who delivered the opinion of the Court, used the following words, after quoting the explanatory language of Chancellor Harper in *Yates* v. *Mitchell,* 1 Rich. Eq. 265, in regard to the doctrine announced in *Vidal* v. *Verdier,* Speer's Eq. 402: "But he said further, that this had nothing to do with the case he was then discussing, because in that case there was not a double set of expressions indicating different estates conveyed as in *Vidal* v. *Verdier.*"

These authorities clearly establish the doctrine, that unless there are two sets of expressions, one denoting that the remainderman is to take an absolute estate, and another set of expressions limiting him to an estate for life *with remainder to* his issue, and a limitation over in the event of his not having issue, the rule announced in *Vidal* v. *Verdier,* Speer's Eq. 402, can not be successfully invoked, as it was only intended to be applied when there was a necessity to reconcile the apparent repugnancy, by restricting the dying without issue, to the lifetime of the tenant for life, and thereby permitting every part of the will to have its proper effect.

In the case of *Vidal* v. *Verdier,* Speer's Eq. 402, James Felix Vidal was given an absolute estate after the death of the life tenant. It was subsequently provided that if he died without leaving a lawfully begotten child or children, then and in that case, the whole property, both real and

personal, be divided among the rest of his nephews and nieces, share and share alike. So far no valid objection could be urged to the provisions of the will, as it is not an *inconsistency,* but only an instance of that which commonly arises, when an executory devise or a contingent or substitutional limitation is created.

A different principle, however, prevails when there is a repugnancy between those provisions giving a fee in the first instance, and those subsequent provisions which destroy it, or cut it down to a life estate. The will subsequently provided that in case of the death of James Felix Vidal, leaving a lawfully begotten child or children, then and in that case, the whole property, both real and personal, was to be divided between them share and share alike. It will thus be seen, that if he died without issue, the property was to go to others, and that if he died leaving a child or children, the property was to go to them. Therefore it was certain that he could not, in either event, enjoy more than a life estate. It was with a view of reconciling this repugnancy that the Court in that case, restricted the dying without issue to the lifetime of the tenant for life.

In the case of *Marshall* v. *Marshall,* 42 S. C. 436, 20 S. E. 298, the will did not provide that the property should go to the issue of John W. Marshall, and this is the distinguishing feature between that case and *Vidal* v. *Verdier.* The case under consideration comes within the doctrine announced in *Marshall* v. *Marshall, supra.*

We proceed, lastly, to consider the case of *Blum* v. *Evans,* 10 S. C. 56, in which the provisions of the will were as follows:

"I give to my beloved wife my entire estate, real and personal, during her lifetime, under the control and management of John Horlbeck and G. W. Dingle, as trustees, substitutions to be made by the Court and approved of by the parties interested.

"I wish my wife to enjoy this estate during her life; at her death to go to my daughter, Emma Julia. Should my daughter die without issue, I wish my entire estate to be divided equally among the Horlbecks (my wife's family) and the Blums (my family), one-half to the Horlbecks, one-half to the Blums."

It will thus be seen, that the facts were similar to those in *Marshall* v. *Marshall,* 42 S. C. 436, 20 S. E. 298, and not to those in *Vidal* v. *Verdier,* Speer's Eq. 402, in this important particular, to wit: That if the testator's daughter, Emma Julia, to whom he gave an absolute estate in the first instance, had issue living at the time of her death, *the property was not to go to such issue.* There were no express words conferring such right upon the issue, nor was that a case, in which they could take by implication. *Shaw* v. *Erwin,* 41 S. C. 209.

The doctrine announced in *Vidal* v. *Verdier,* was therefore incorrectly applied in *Blum* v. *Evans.*

While, as already stated, the facts in the last mentioned case were similar to those in *Marshall* v. *Marshall,* and entitled the parties to similar relief, the conclusions were different. We must, therefore, regard the case of *Blum* v. *Evans* as practically overruled by *Marshall* v. *Marshall,* which was a later case.

Judgment reversed.

MESSRS. JUSTICES HYDRICK *and* WATTS *concur.*

MR. JUSTICE FRASER, *dissenting.* I can't concur in the opinion of the majority of the Court in this case, and would not do so unless I felt impelled by indisputable authority.

I think that the Circuit decree ought to be affirmed upon the authorities and for the reasons therein stated.

It would not be profitable to compare the cases and review them all. While it is true that certain words have received judicial construction, yet it is a rule which is applicable to

the construction of every will, that the intention of the testator shall govern.

I know that the word "intention" is a term of art and signifies the meaning of the words there used, and does not refer to the purpose which the testator may have had in his mind. Applying this fundamental rule of construction, the question is, what estate is given to the children of Mr. Bischoff in his will? Without attempting to cite the will in full, which will appear in the case, and to which reference can easily be made, we find that he provided in the first clause of his will for the payment of his funeral expenses and just debts.

In the second clause of his will he gives all of his property to his wife, not merely to his wife, but to the individual, Anna Martha. She is to hold the property during her natural life for her and "our" children's support, and for the education of our beloved children, and after her death the whole real estate and personal property to be equally divided between our beloved children, share and share alike. The children do not take as a class, but he names them— Anna Matilda, Albertine, Julia Wilhelmine, Martha Caroline, Anna Matilde Sophia, Carl William, John Godfried, and then he provided in general terms for any other children who might thereafter be born. Up to that point the children unquestionably take a fee in remainder. Unfortunately he adds item 3, in which he says: "In case any of our children should die and not leaving any issue alive, then his or her share or part shall be equally divided between our children then living, or their issue, share and share alike. The issue, if any, are entitled and receive the parent's part."

Item four provides that the estate shall be kept together. Item five provides that if the wife, Anna Martha, should be dissatisfied with the provision he had made for her, she could then, at her option, take her share under the statute.

Item six provides that the executrix and executor "shall invest my personal property in real estate, bond and mort-

gage, or other good security, according to their own best judgment."

If there is anything clear in this will it is that Mr. Bischoff loved the persons named, and, with the highest sense of conjugal and parental love, attempted to provide for the specific objects of his bounty, and he calls them by name.

The opinion of the majority of this court, while not depriving the widow of her advantages, almost absolutely destroys the interests of the children. The children, it is held, take a fee defeasible upon their dying without issue. The issue of the children take a fee. Mr. Bischoff provides that the income from his estate shall be used for the education and support of his children. The unknown grandchildren take the property itself. The children whom he knew by name and loved will be entitled to their bare support after they have received their education. They are entitled to their support and nothing more until the day of their death. The estate can never vest in them, can never be subject to their control, and upon the judgment of the executor or executrix, as to what is a reasonable amount for their support, they must depend.

The Circuit decree misquoted section 3. It does not say "in case our children should die not leaving issue," it says "in case our children should die and *not* leaving issue." Our children will die, every one of them. There is no contingency about that. There *was* a contingency as to whether our children all, or any of them, would die before the life tenant.

It seems to me that as the time for distribution is fixed at the time of the death of the life tenant, and there are no restrictions upon their taking, those who take, take a fee.

It is conceded that the word "then" refers to the time fixed. The only time fixed in the whole will is the time of the death of the wife. Now substitute for the word "then"

the fixed time we have if any of our children be dead, at the time of the death of my wife, the issue, if any, shall take; if there be no issue of a predeceased child, then those who survive my wife shall take, the issue of a deceased child to represent the parent. What estate shall they take? The will is silent, and the statute says a fee.

By this construction the issue of children take now in fee simple, while the children, the immediate objects of his bounty, take a fee defeasible.

So entirely free is this testator from a foolish pride, in keeping up a family estate to descend from generation to generation, that in item four he gives power to the executrix and executor to rent or lease the real estate and use the same, or the net proceeds as hereinabove stipulated. That is to say, if it becomes necessary for the education and support of the persons named, to use the *corpus* itself, it shall be used.

It will be further observed that Mr. Bischoff says *who* shall take, not *how* they shall take. He limits the estate of the wife to a life estate. There is nothing in this will which is inconsistent with a fee in those who shall take at the death of the life tenant and under the statute that makes a fee.

It will be observed further that Mr. Bischoff refers to money, and can it be that he intended that his children should have anything but a fee in the money? And yet there is no distinction between money and land, and as they take the money they take the land. But they do not take the money or the land.

Item four provides (subsequent to item three, and controlling it) that his executrix and executor "hereinafter named" shall keep together his real estate and rent or lease the same to the best advantage, and use the same or the net proceeds as hereinabove stipulated, that is, for the education and support of the children.

Item six provides that the executrix and executor shall invest his personal property in real estate, bonds and mortgages, or other good securities, according to their own best judgment. Now, if the children named are to take a fee defeasible, then the money must be kept together until the last child is dead; no, not until the last child is dead; the issue or deceased children take their shares as their parents die, and take it in fee.

There is no provision in the will for partial settlements, as each child dies, and the unknown issue comes into his own and the whole will shows that no such thing is contemplated. The property is put in charge of the executrix and executor, not in the hands of trustees.

The appointment of a trustee might have indicated that Mr. Bischoff contemplated an indefinite period of holding, but when he conferred the duty upon his executrix and executor, he showed, and the will showed, that Mr. Bischoff apprehended that the time between his death and that of his wife would not be long, and therefore the time of distribution and the time of vesting of the estate will be short and appointed those to manage his estate who, in contemplation of law, should hold for but a short time.

Even if item 3 must be construed to cut down a fee simple to a fee defeasible, items four and six, subsequent items, which show that an early division is contemplated, ought to control the disastrous consequences of section three.

It seems to me that upon reading the will as a whole, it is very manifest that Mr. Bischoff intended that his wife should have the use of all of his property during her life, and that the mother love would prompt her to do just what he said could be done—use the property that had been his for the education and support of his wife and children, and then at her death, those children named, and such others as might be entitled, should take the estate and should take it so that it might be of some use to them, and treat his sons and daughters like men and women, and not keep them

as perpetual wards of chancery and require them at all times during their lives to apply to the Courts for permission to sell and reinvest every cent of their property.

For these reasons I dissent.